W. H. McIntyre, appellee, v. Frank H. Cunningham, APPELLANT.

FILED MARCH 28, 1910.   No. 15,949.

1. **Contracts:** TIME OF PERFORMANCE: CONDITIONS PRECEDENT.   In determining whether stipulations as to the time of performing a contract for the sale of chattels are conditions precedent, the court will attempt to discover what the parties really intended, and if time appears, on a fair consideration of the contract and of the facts and circumstances surrounding the parties, to be of the essence of the contract, stipulations in regard thereto will be held conditions precedent.

2. **Appeal:** EXCESSIVE VERDICT: REVIEW.   In a suit upon an account where the evidence is conflicting and counsel complain that the recovery is excessive, they should indicate in their oral or written argument the part of the record that will sustain their contention. Failing to do so, such an assignment will ordinarily be overruled.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE.   *Affirmed.*

*Lambert & Winters,* for appellant.

*Montgomery & Hall* and *E. R. Leigh, contra.*

ROOT, J.

This is an action for a balance due for goods manufactured by the plaintiff and sold to the defendant according to a written contract between them.   Defendant counterclaimed.   Plaintiff prevailed, and defendant appeals.

1. In 1905 defendant was president of the National Association of Rural Letter Carriers.   Prior thereto he had devised a mail cart which he expected to sell to rural mail carriers.   Plaintiff is a manufacturer of buggies, carriages, carts and wagons.   Defendant, in February, 1905, conferred with plaintiff's sales agent, and on the 27th day of that month signed the following writing prepared by said agent: "Auburn, Indiana, 2-27-'05.   Auburn Wagon

& Buggy Works, Auburn, Ind.   Dear Sirs:   Please enter
my order for five hundred (500) two-wheeled carts at
twenty-five dollars ($25) each, net.   I hereby hand you
two hundred dollars ($200) as a cash payment on this
contract, and desire that the terms on the remainder be
as follows:   On each and every cart I order from you I
will remit ten dollars ($10) and furnish you full shipping
instructions.   These carts are to be crated and delivered
F. O. B. cars, Auburn, Indiana, at the above price, and a
separate invoice sent to me covering each shipment.   On
the first of each and every month you will render me a
statement for the carts shipped during the month, giving
me credit for the amount of ten dollars ($10) paid on
each cart, and the balance that will then be due on each
and every cart I will pay you in cash.   It is understood
that I will take all of these carts within twelve months
from May 1st, 1905, and settle for the same in full within
that time and in accordance with the terms above.   These
carts are to be built according to the sample sent you, and
according to our verbal understanding with each other
when I was at your factory, and it is also agreed that
such minor changes as we have this day decided upon are
to be made.   Bodies are to be painted white, gears gold
stripes and white, lettering to be as follows: Association.
U. S. Mail, R. F. D. Route No. —.   Please start on this
order at once, and be prepared to ship these carts as
promptly as you possibly can after I send you orders.
Yours truly, —.   P. S. If these wagons are ordered with
the better grade of wheels an extra charge of $2.50 is to
be made.   See copy of guarantee, which I understand you
place on all of these carts.   F. H. Cunningham."

Prior to May 1, 1906, defendant sent plaintiff orders
for 171 carts, 51 of which were shipped subsequent to
that date.   May 2, 1906, plaintiff wrote defendant that,
owing to an advance in the price of raw material, he
would not fill any more orders for carts at the old price.
May 8 defendant sent plaintiff 11 orders for carts, and
inclosed checks aggregating $110.   May 10 plaintiff re-

turned the checks and orders, again stating he would not fill any more orders at the old price. He also requested defendant to remit sufficient funds to pay in full for the carts ordered before that date, but not shipped. Defendant did not comply with this demand, and plaintiff shipped the carts without prepayment therefor. About May 16, 1906, defendant, after an examination of his accounts at plaintiff's factory, claimed and was given credit for commission on carts sold by plaintiff direct to carriers, but made no complaint because plaintiff had refused to furnish defendant any more carts at $25 a vehicle.

The trial court instructed the jury that the defendant was not entitled to recover for the plaintiff's refusal to fill orders sent subsequent to May 1, 1906. Defendant's counsel specifically limit their complaint to this attitude of the court and the alleged failure of the jury to give credit for the $200 paid February 27, 1905. No other features of the case will be discussed.

Defendant now insists that time was not of the essence of the contract, and that plaintiff's refusal to fill orders sent him subsequent to May 1, released defendant from the burden of sending shipping directions for, or advance payments upon, the 321 carts. Plaintiff contends for the converse of these propositions. It may be the contracting parties could have stated more definitely the terms of their contract, but we think their intention may be ascertained with reasonable certainty. The order in the first instance is for 500 vehicles, but subsequently it is qualified so that the carts are to be delivered only according to shipping instructions to be sent by the defendant. This condition of the contract prevented plaintiff from delivering carts except as the defendant might designate, and the defendant's agreement to take all of the carts within 12 months of May 1, 1905, should be construed to amount to an agreement on his part to furnish plaintiff within that time shipping instructions for all of these carts so they might be delivered within or soon after the close of the

year. The defendant had also agreed to advance $10 upon each cart ordered. It would manifestly be unreasonable to hold that the plaintiff undertook to bind himself to keep on hand for an indefinite period for defendant's use carts of a peculiar design not adapted for the general trade, but rather, it seems to us, the limitation of 12 months within which defendant bound himself to take the carts was intended for plaintiff's protection, and that time was of the essence of the contract. *Higgins v. Delaware, L. & W. R. Co.,* 60 N. Y. 553; *Townes v. Oklahoma Mill Co.,* 85 Ark. 596, 109 S. W. 548; *Russell v. Witt,* 38 Ind. 9.

It is suggested that the plaintiff did not have the 321 carts ready to tender, but was in arrears in filling the orders on hand, May 2, 1906. All of these orders were filled with as much dispatch as could be expected, the character of the goods being considered. By the terms of the contract between the parties the plaintiff had no right to tender a single cart or any number of carts, so as to create an obligation on the part of the defendant to pay therefor, until Cunningham had ordered such cart or carts, and the right of Cunningham to order the vehicles expired with the 2d day of May, 1906. We are of opinion that the district court was right in holding that defendant should have ordered the 321 carts and paid $10 a vehicle before May 2, 1906, in order to hold plaintiff liable for a nondelivery thereof.

2. Defendant contends he has not been given credit for the $200 deposited with plaintiff February 27, 1905, but he has failed to refer to any evidence in the bill of exceptions to sustain his contention. The testimony and the exhibits cover over 300 pages of the bill of exceptions. We find reference in the defendant's testimony to many checks and other documents not introduced in evidence, but nowhere has he prepared a statement of his account with plaintiff. Defendant admitted that the last 51 carts and some extras furnished him entitle plaintiff to a credit of $1,384.75. The defendant testifies that he should be

credited with $510, the aggregate of 51 checks of $10 each, the $200 deposit referred to, and $60 for commissions on carts sold by the plaintiff direct to mail carriers. Deducting these credits, there would be a balance of $614.75 due the plaintiff on account. The verdict of the jury was for $670.85 principal. Plaintiff's bookkeeper testifies that the commission was credited on the account preceding the charge for the 51 carts, and, if this were done, the balance due the plaintiff, according to defendant's testimony, would exceed the verdict by $3.90. It is true one item of counterclaim was submitted to the jury, but the verdict does not inform us whether they did or did not find in defendant's favor thereon. In the state of the record and the briefs the recovery will not be held excessive.

The judgment of the district court is right, and is

AFFIRMED.

LETTON, J., not sitting.