ALEXANDER McFADDEN v. GEORGE C. WETHERBEE & Co.
(A CORPORATION).

*Contract for sale—Delivery of property—Waiver of breach—
Speculative evidence.*

1. Where, under a contract for the delivery to a vendee of pine blocks
of a *specified* quality, the vendee failed to *reject* the blocks at time
of delivery, although advised that they were defective, and paid
for the same,—

   *Held*, in an action for damages based on the refusal of the ven-
dee to carry out such contract, that he had *lost* the right to plead
a *breach* of the contract as far as the blocks so *paid for* were
concerned, nor would such alleged breach authorize the rejection
of blocks *thereafter* delivered under the contract, without a
showing of their *defective* quality.

2. Where, after the *partial* performance of such contract, the vendee
refused to receive any more of the blocks contracted for, and, in
a suit for damages by the vendor, requested the court to instruct
the jury that, in determining the number of cords of blocks the
vendor might have delivered after such refusal, they could take
into consideration the number of loads delivered during the pre-
ceding five months, or any portion of that time,—

   *Held*, properly refused, the amount of blocks sawed at the mill
*during the season* (which were *all* to be delivered), and *after* the
vendee's refusal to accept any more, being easily ascertainable,
rendering speculation unnecessary.[1]

Error to Wayne. (Jennison, J.) Argued October 14, 1886.
Decided October 28, 1886.

Assumpsit. Defendant brings error. Affirmed. The facts
are stated in the opinion.

*John W. McGrath,* for appellant:

As to waiver by defendant of breach of contract (see head-

---

[1] An unsatisfactory case to report. An examination of the opinion
is desirable.—REPORTER.

note 1), see *Moore v. Detroit Locomotive Works*, 14 Mich. 266-7, and cases cited; *Bowman v. Teall*, 23 Wend. 306.

*Geo. H. Prentis*, for plaintiff.

[No authorities cited.—REPORTER.]

MORSE, J.  This cause was originally commenced in justice's court.  The plaintiff claimed that the defendant, a corporation doing business in Detroit, had refused to carry out a certain contract, by which refusal he had suffered damage. He declared orally, as appears from the justice's return, in an action of assumpsit upon the common counts,—

"Claiming damages for a violation of special contract, by which defendant agreed to buy of plaintiff a quantity of wooden blocks at $1.50 per load, which defendant violated, and plaintiff was obliged to sell said blocks to other parties at a less price, to plaintiff's damage of $300 or under."

Defendant pleaded the general issue, and gave notice of set-off and recoupment.

The justice gave judgment for the defendant.

Plaintiff appealed to the circuit court for the county of Wayne, in which court, upon a trial before a jury, the plaintiff recovered a judgment of $236.87.

The contract established by the evidence of the plaintiff upon the trial was to the effect that plaintiff was to sell to defendant, to be delivered during the sawing season of 1883, all the white pine blocks, of a specified kind and quality, that the mill of Moffat, Eatherly & Co. produced during such sawing season, at $1.50 per load.  The blocks were to be at least ten inches in length.

The defendant admitted the contract, in substance, but claimed that plaintiff was told that the blocks were to be used for pail and tub staves; that the white pine was to be selected from the ends of logs; that the blocks were to be delivered as fast as the mill cut them; and that, when the contract was made, plaintiff said the mill would run for a couple of weeks on Norway pine, and not more than that on Norway.

As to the breach of the contract, plaintiff testified as follows:

That the blocks delivered were of the kind called for by the contract, and that he had been paid for what blocks he had delivered; that he commenced delivering within a day or two, and continued to deliver until about the fourteenth or middle of July, when they shut down the mill to put in a new gang; that when the mill got to cutting white pine again he commenced delivering again, and delivered about four or five weeks, when defendant stopped him, in the latter part of October,—about the twentieth ; that plaintiff was informed by defendant's only authorized agent that defendant had made other arrangements, and would not receive any more blocks; that after plaintiff found that defendant would not receive any more of the blocks, he sold them to other parties, for the best prices that he could obtain, peddling them around the streets; that he was obliged to split most of the blocks, at an extra expense, and obliged to cart a large quantity of them to a lot he had obtained for that purpose, and to store them until he could sell them, when he again had to cart them to his customers; that it was difficult to sell them at that time, whereas he could have sold them readily at the time he made the contract with defendant, and that by reason of such extra splitting, carting, etc., and by being obliged to sell for less than $1.50 per load, plaintiff lost upwards of $230; that plaintiff was ready and willing to deliver the blocks to defendant, but defendant would not receive them.

Defendant introduced testimony tending to show that the plaintiff first delivered twenty loads of blocks, as a sample lot, before the contract was made. Afterwards he delivered twenty-four loads in June, and thirty-three loads in October, for all of which he was paid. He delivered no others. No blocks were delivered in July, August, or September; that plaintiff did not deliver all the blocks he received from the mill of Moffat, Eatherly & Co. during the sawing season, up to October; that defendant refused to receive any more blocks because plaintiff had waited so long between June and October in delivering blocks that the defendant thought he was not going to deliver any more, and had procured stave timber elsewhere; that the blocks delivered in October were so de-

livered in the absence of the foreman of the defendant, who, when he saw them, told plaintiff that they were defective, many of them being shorter than ten inches, and others knotty, shaky, or rotten.

It is claimed by the defendant's counsel that the charge of the court practically excluded the defense, which was—

1. That from the first of July up to the third of October no blocks were delivered, when there was abundance of evidence to show that the mill produced blocks during that time; that, the contract being to deliver as fast as cut by the mill, this failure to deliver was a breach of the contract, which precluded the plaintiff from recovering upon it.

2. That the blocks actually delivered were not of the character contemplated by the contract.

In accordance with his theory of the case, he requested the court to instruct the jury, in substance, that if no blocks were delivered in these three months, when they could have been obtained at the mill, the defendant had a right to terminate the contract.

This was properly refused. The plaintiff's evidence of the contract only required the delivery to be made during the sawing season. Such a charge was not proper, unless the jury were first instructed that they must also find the contract of delivery to be, as claimed by the defendant, as fast as the blocks were cut.

But the fact is, as appears from the record, that the court adopted the defendant's theory of delivery, and expressly charged the jury that they must find that the plaintiff delivered the blocks as fast as he could obtain them from the mill in order to entitle him to a recovery; saying:

"Now, if you should be satisfied that no blocks were sawed in July or August, or any other month, so the plaintiff could get them, why, that would establish the plaintiff's claim under the contract, because he was to deliver them as fast as he could get them from the mill. Therefore, if you believe the plaintiff delivered these blocks during the sawing season as fast as he could reasonably get them from Moffat's mill,—or

if he didn't deliver them, but offered to deliver them, and defendant refused to accept them,—then he would be entitled to a verdict."

It is complained that the court further said:

"If you believe that the plaintiff delivered the blocks, as called for by the contract, as soon as and as fast as cut, during the sawing season,—as fast as he could get them from the Moffat mill,—then the plaintiff is entitled to recover,. whether he made delivery of them *at the end of one month, two months, or at the end of three months.*"

It is argued that the words italicized in this opinion were misleading, and gave the jury to understand that it was not necessary to deliver any of the blocks in July, August, or September, even if the mill was sawing blocks in those months. We do not think this claim is correct. There was evidence upon the part of the plaintiff that the mill did no sawing of white pine in those months, after about the middle of July; and the direction of the circuit judge could only be construed as a charge that it was only necessary to deliver the blocks as fast as they were sawed, which, under the defendant's own theory, was all it could ask.

The defendant's counsel also wanted the jury instructed that,—

"In determining the number of cords of blocks which the plaintiff might have delivered after the refusal of the defendant to receive, the jury are entitled to take into consideration the number of loads delivered by him during the preceding five months, or during any portion of that time."

This was properly refused. The amount sawed at the mill during the season, and after defendant's refusal to accept any more, was easily ascertainable, without any speculation.

The court further instructed the jury as follows:

"If the blocks which were delivered in October were not of the kind and quality provided for by the contract, the defendant had a right to reject them, and refuse to receive such blocks. But the fact that some of the blocks were defective would not, of itself, justify the defendant in refusing

to perform the contract; because, if any of the blocks which were brought there were defective, why, of course, the defendant had a right to reject them, and call for the proper kind of blocks under the contract.

"Now, in passing upon this question as to whether the plaintiff had a right to deliver these blocks, or to offer to deliver these blocks, at the time he says he did, you may also consider the fact that several loads—I think 32 or 33, the plaintiff's requests seem to show—were delivered in October, and paid for by the defendant. The plaintiff's counsel says that is evidence showing that the defendant did not intend to cancel this contract, because it received them in October, whereby defendant waived that part of the conditions of the contract.

"Now, upon the other hand, the defendant says that they were delivered to this party, and that the person who received them—one of the agents there—had no right to do so, and that, therefore, it was not a waiver. All I can say upon that subject is this: If, under the evidence, you find that the defendant knew the fact of the delivery, and being paid for is not denied,—if you believe the defendant knew of the fact of the delivery, and paid for them,—why, then you may consider that as a waiver of any particular time and condition referring to this part of the contract.'

Error is assigned on this part of the charge. We think the circuit judge was right. The defendant had the right, at the time of the delivery, to reject any and all blocks not coming up to the standard of the contract; but if it paid for them at that time, or afterwards, without rejecting any, although complaint was made of their being defective. the defendant nevertheless lost thereby the right in this suit to plead a breach of the contract as far as the blocks so paid for were concerned ; nor would it authorize the rejection and non-acceptance of blocks thereafter to be delivered under the contract, without a showing that the blocks so offered to be delivered were also defective. No such showing was made.

Upon the trial defendant offered to show that it had made, previous to October, other arrangements for timber. This being objected to, the court said to defendant's counsel that, if he desired to show that defendant was injured by the

alleged breach of the contract by plaintiff by not delivering the blocks as fast as they were cut at the mill, he might show such arrangement; otherwise he thought it immaterial and incompetent. Defendant's counsel insisted upon his right to show the arrangement for buying timber elsewhere, irrespective of the question of damage. The court thereupon refused to permit the defendant to prove such arrangement.

We think there was no error in this ruling. The testimony could have no tendency to show a breach of the contract upon the part of the plaintiff; and, if the purchase of timber of other parties resulted in no loss or damage to defendant, we fail to see any relevancy in the inquiry.

We find no error in the record. The judgment is affirmed, with costs.

The other Justices concurred.