## HABICHT *v.* GALLAGHER.

1. SALES—CONTRACTS—EVIDENCE OF BREACH—PRIOR SHIPMENTS.

    It was incompetent to show, in defense of an action for the vendee's breach of contract brought by a seller of preserved cherries, that goods previously received by the purchaser were defective, for the purpose of showing that goods refused before delivery and in the seller's hands did not conform to the requirements of the contract.

2. SAME—INSPECTION—INFERENCES.

    Where an actual inspection showed that the consignment of cherries refused was in good condition after refusal to accept, and testimony was offered tending to show that if cherries were properly prepared they would keep from 18 months to two years, it could not be inferred from testimony that they had commenced to ferment three months after the time of tendering shipment, no stipulation having been included in the contract as to what crop was intended, that they were defective when defendants declined to receive the consignment.

3. SAME—DAMAGES—NOTICE OF SALE.

    In the absence of any testimony that the price obtained on resale at auction was unreasonable or an unfair basis of damages, defendants who had rejected the offer to ship the cherries, and had neglected to give shipping instructions in response to repeated requests of plaintiffs, was not entitled to have submitted to the jury the question of sending and receiving notice of the resale made on defendants' account, of which defendants claimed to have had no notice.

Error to Wayne; Murfin, J. Submitted April 11, 1912. (Docket No. 150.) Decided October 7, 1912.

Assumpsit by Frank E. Habicht and others, copartners as Habicht, Braun & Company, against Frank Gallagher and others, copartners as E. B. Gallagher & Company, for breach of a contract of sale. A judgment for plaintiffs on a verdict directed by the court is reviewed by defendants on writ of error. Affirmed.

*Ralph B. Wilkinson,* for appellants.

*Clark, Lockwood, Bryant & Klein,* for appellees.

MOORE, C. J.    The plaintiffs are importers and jobbers in confectioner's supplies and fruits, having their place of business in New York.    The defendants are engaged in a confectioner's supply business in Detroit.

About May 14, 1907, plaintiffs, through their agent, Frank Gruber, received from defendants an order for goods, among which were 10 cases of fancy Bigarreaux cherries:

> This order is subject to goods being in stock on the day of shipment promised.
>
> 10 c/s Fancy Bigarreaux _____26
>
> 2 c/s on arrival _____
>
> 6 c/s before Dec. 1st, 1907_____
>
> 4 c/s before April 1st, 1908 _____
>
> 2 c/s A. D. small sour cherries before Jan. 1st_____28½
>
> 5 c/s Asst. Fr. fruits before April 1st _____
>
> Prices and quality guaranteed.

A portion of this order was shipped and payment made therefor.    Defendants declined to take four cases of the Bigarreaux cherries and one case of the sour cherries.

After the testimony was all in, the trial judge directed a verdict in favor of the plaintiffs.    The case is brought here by writ of error.    Counsel discuss two questions in the brief.    We quote:

"Notice of intention to sell.    The only proof of any notice given of the intention to sell is the testimony of Mr. Bryant, one of the attorneys for plaintiff, who produced a letter which he said was sent to defendant.    This letter defendant absolutely denies having received.    This, in itself, must raise the question for the jury as to whether or not such letter was in fact received by defendant; this is a material question, in view of the fact that the price realized upon such resale is the basis of the measure of damages."

Second (we again quote):

"It was a question for the jury as to whether the goods

refused by defendant were of good quality. All of the cases cited by plaintiff in its argument in the trial court hold merely that the defendant is not justified in refusing to accept goods delivered in installments, because the goods delivered in previous installments had not been of the kind provided for in its contract, and that there must be proof of some kind that the goods rejected were not up to the standard. In the present case the defendant offered the testimony of several witnesses that goods of the quality provided for in the contract between the parties in this cause would keep from 18 months to 2 years in first-class condition without spoiling. The testimony of plaintiff in this case further shows that these goods had spoiled at the time of the sale on July 28th, which was about three months after the time when defendant should have received them; and it is the claim of defendant that these were facts which bore upon the question as to whether the goods which defendant refused were in first-class condition at the time of refusal, and should have been left to the jury to determine, particularly in view of the fact that the contract itself guaranteed the quality of the goods."

In order to pass upon the propositions intelligently, it will be necessary to consider somewhat in detail the facts disclosed by the record. It will be noticed that the last of the cherries were to be ordered out before April 1, 1908. On March 26, 1908, the plaintiffs wrote defendants, calling attention to the order, and said:

"We regret to state that we will be unable to hold these goods any longer for you, and will ship same to you on April 1st as ordered, which we trust will be satisfactory."

To this letter a reply was sent, saying:

"*Gentlemen:* Your letter of the 26th pertaining to cherries to hand. Do not under any circumstances ship us any more Bigarreaux cherries. We have a number of cases on hand and they are not going at all, selling very slow. We cannot use them at any price."

Another letter followed in March, which is not material here.

On June 19, 1908, the Detroit attorneys for the plaintiffs wrote defendants as follows:

"These cherries have been purchased by you and were obtained by our clients to specially fill this order and are held subject to your order.  We now write you to advise you that our clients will hold these subject to your disposition until June 23rd.  Not hearing from you on that date, they will sell the same in the open market and we have instructions to begin suit against you to recover for the difference between the price obtained by them and the contract price which is the true measure of damages for a breach of this contract."

The testimony is that this letter was mailed with postage paid to defendants.  They claim they never received it.

The following testimony was given:

"Previous to April 1, 1908, I examined the cases held at our warehouse, and found the cherries in first-class condition; examined them a number of times prior to April 1st, at intervals of about one month, and found them in first-class condition on and before April 1st.  I have been examining goods of this discription for over 10 years.  After April 1st we stored them at our warehouse, No. 130 Worth street, New York City.  As we did not receive shipping instructions from the defendant, we put goods up at auction on July 28, 1908, and same were sold on that date as per bill of sale from Burdette & Dunn, auctioneers.  I examined the goods twice after April 1st. The first time the goods were found in first-class condition.  The second time, about July 10th, the goods began to slightly turn. The goods, when sold at auction, brought less than $24\frac{1}{2}$ cents a pound partly by reason of the fact that the goods were not in first-class condition, and partly because the goods were sold at public auction.  They brought at the auction sale $205.20.  The expense of the sale was $11.70.  The amount still due the plaintiff from the defendant is $370.14."

This testimony was not contradicted by anybody, except as the following may tend to contradict it:

"*Mr. Wilkinson:* I have a witness to whom these goods were sold by Mr. Gallagher, goods bought from Habicht, Braun & Co., who will testify as to the condition and quality of those cherries as being sour and moldy,

and he returned them to Mr. Gallagher. I tender that evidence without putting the witness on the stand.

"*The Court:* I think that is the proper tender, and, were the witnesses here, I would rule it, and then you may have the benefit of an exception. (Exception for the defendant.)

"*Mr. Wilkinson:* I also tender as witnesses persons who are familiar with and who have handled Bigarreaux cherries, which testimony will be cumulative to Mr. Wallace's and Mr. Gallagher's as to the length of time that cherries properly cured and prepared will keep without molding or turning sour.

"*The Court:* I would make the same ruling as to that. In view of the position I take, I do not believe that is propper testimony."

On April 9, 1908, plaintiffs wrote defendants:

"Up to the present writing we have not received shipping instructions from you for the four cases of Bigarreaux cherries and one case of small sour cherries for which we sent you invoices on April 1st. As it is impossible for us to hold these goods any longer for you we would thank you to kindly give us shipping instructions covering same."

They wrote again May 7, 1908, asking for shipping instructions.

The only complaint made in the correspondence as to the cherries is as follows: On December 2, 1907, defendants wrote plaintiffs as follows:

"Regarding the Bigarreaux cherries we again ask you not to make shipment of these cherries at any one shipment, and want to say to you that you need not make shipment of them at all, unless they are running better than the cherries we have been receiving from you this season. We are having complaints on the cherries we receive from you right along, parties state that the top layers are all right, but the bottom of the box contains pieces which they cannot use. To satisfy ourselves, the writer went through a number of boxes this morning, in the presence of a customer who had made complaint, and we find them just as he said they were. He would not buy any more of this particular brand but ordered cherries of another brand which we have in stock and which are all right.

"Do not ship the cherries until we order them out, and

then do not ship unless they are strictly No. 1 Bigarreaux whole cherries. We cannot use them if they are part pieces."

It is claimed complaint was made to Mr. Gruber, the agent.

We have stated in substance what is shown by the record. It was not competent to show that the cherries which were delivered were not up to the standard, for the purpose of showing that those which were refused were not up to the standard. *McFadden* v. *Wetherbee*, 63 Mich. 390 (29 N. W. 881); *Kupfer* v. *Clothing Co.*, 141 Mich. 325 (104 N. W. 582). Was there any other testimony from which the inference that the cherries were not up to the standard could be fairly drawn? It is said that this testimony would have been supplied by the rejected testimony offered, to the effect that properly prepared cherries would keep from 18 months to two years. Did any one suggest as to when this period of time was to begin? It is evident cherries cannot be picked and cured at all times of the year. The order was given May 14, 1907. It was to be filled between its receipt and the 1st day of the following April. The order does not state from what crop it was to be filled. It is true that the quality of the cherries was guaranteed, but that applied to their condition at the time when they were to be delivered. We cannot see how the testimony, if admitted, would give rise to a fair inference that the cherries were not in good condition April 1, 1908, especially in view of the testimony that an actual inspection after that date showed them to be good.

Was it essential to serve notice of sale before the sale at auction could be made? It should not be forgotten that on March 27, 1908, defendants wrote plaintiffs:

"Do not under any circumstances, ship us any more Bigarreaux cherries. * * * We cannot use them at any price."

They were urged March 30th to give shipping orders.

They were informed April 9th that it was impossible for plaintiffs to carry the goods any longer. They were urged on May 7th to give shipping orders for these goods. They did not do as requested, and the cherries were sold July 28, 1908. There was no testimony that they did not bring all they were worth. The case of *Holland* v. *Rea*, 48 Mich. 218 (12 N. W. 167), is pertinent upon the subject of notice.

If defendants had offered testimony to show that the difference between the price brought by the cherries and the contract price was not a fair measure of damages, it is possible there might be some ground of complaint that the case was not left to the jury. But we have been unable to find any such testimony in the record.

Judgment is affirmed.

STEERE, MCALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.