KEOPPLE *v.* DELIGHT LUMBER COMPANY.

Opinion delivered November 11, 1912.

1.   CONTRACT—BREACH—NONPERFORMANCE.—Under the rule that he who commits the first substantial breach of a contract can not maintain an action against the other contracting party for a subsequent failure

on his part to perform, a vendor of certain timber can not insist upon a forfeiture of a sum placed in a bank by the vendees as a guaranty that they will carry out the terms of their contract, where the vendor, prior to the alleged breach, was negotiating with a third party for the sale of the same timber.    (Page 238.)

2.   SAME—PERFORMANCE—WAIVER.—A literal compliance with the terms of a contract may be waived by the parties thereto.    (Page 239.)

Appeal from Pike Chancery Court; *James D. Shaver*, Chancellor; reversed.

### STATEMENT BY THE COURT.

The appellants, Keopple and McIntosh, and the appellee lumber company entered into a contract whereby the lumber company agreed to sell to the appellants "all the white oak and hickory timber owned by them on nine forties of land" in Pike County, of certain kinds and dimensions specified in the contract. The contract, among other things, provides as follows:

"The purchasers agree to keep a man in the woods to pass on all logs as they are being cut and to accept all logs which are offered by the company that will meet the specifications and to reject any logs that may be offered which will not meet the above specifications, and said inspection shall be final. The company agrees to cut and deliver all of said timber as above described f. o. b. cars of the St. Louis, Iron Mountain & Southern Railway Company at Delight, Ark. The purchasers agree to pay $20 per thousand feet for all white oak and hickory timber. Said purchasers agree to pay for all logs delivered at Delight, f. o. b. the cars by the company on Monday morning of each week, for all logs delivered in the past week, and to keep on deposit with the Bank of Delight $1,000 as a guaranty that they will carry out the terms of this contract, said $1,000 to be turned over to the company upon the failure of the purchasers to comply with the terms of this contract, otherwise to be subject to the orders of the purchasers.

"The said company agrees to begin the execution of this contract within thirty days from this date, and to continue as rapidly as is consistent without interfering with the regular operation of their sawmill. All timber as herein agreed upon shall be delivered within twelve months from this date. Logs to be scaled with Doyle's scale stick."

The contract was executed on the 29th day of March,

1910.   The appellants deposited $1,000 in the Bank of Delight in pursuance of the contract, and the parties entered upon its performance.

This suit was instituted by the appellants against the appellees in the chancery court of Pike County to recover the $1,000 that had been deposited by the appellants with the Bank of Delight.   The appellants in their complaint set up the contract, and alleged that the same had been complied with by the parties to it until September 19, 1910; that on that day the appellee lumber company notified the appellants that it considered the contract void, and therefore would refuse to comply with or perform the contract on its part. The appellants set up that the lumber company had declared the sum of $1,000 forfeited, and had demanded payment of the same; that appellants had made demand on the Bank of Delight for the $1,000, which it had refused to pay, and they prayed that the sum be adjudged to be a special deposit to guaranty the performance of the contract by appellants, that the same be declared a penalty, and that the receiver of the bank be instructed to pay the same to them.

The lumber company, in its answer, set up that the notice given to appellants on the 19th day of September, 1910, that it would consider the contract void was sent out long after appellants had violated the contract "by refusing to inspect and receive logs in the woods" and by refusing at various times "to pay for logs loaded on cars at Delight," and by notifying the lumber company that it could not accept logs until such time as the appellants might be in position to handle same.   The lumber company also denied that the appellants had complied with the conditions of the contract in any manner.   The lumber company also denied that the deposit of $1,000 was a penalty, and alleged that it was intended by the parties as liquidated damages in case of breach of the contract on the part of appellant, and the lumber company therefore prayed that the receiver of the bank be directed to pay the $1,000 to it.

The court found that the lumber company "in all things complied with its part of the said contract; that the plaintiffs failed and refused to comply with the terms of the said contract by their failure and refusal to receive logs after they had

been notified and requested by the defendant Delight Lumber Company to do so," and further found "that the said $1,000 was intended by the parties, at the time they entered into the said contract, to be liquidated damages in case the contract was breached by the plaintiff."

*Carmichael, Brooks & Powers,* for appellants.

1. If it be conceded that the evidence raises a doubt as to the purpose for which the sum named in the contract was deposited, and whether it was intended as a penalty or as liquidated damages, then the presumption of law would apply that the sum named was intended as a penalty, the tendency and preference of the law being to treat a sum stated to be payable if a contract is not fulfilled as a penalty and not as liquidated damages. Note 39, Am. St. Rep. 636; 13 Cyc. 95; 19 Am. & Eng. Enc. of L. 397; Joyce on Damages, § 1298; 7 Am. Dig., Ch. 4, § 76 p. 79; *Id.* Ch. 4, § 76 (n); *Id.* Ch. 4, § 76 (e); *Id.* Ch. 4, § 76 (d).

The burden of showing whether the sum named is liquidated damages or a penalty is on the one claiming that it is liquidated damages. 19 Am. & Eng. Enc. of L. 397. Where a contract calls for the performance of several or a number of conditions, the sum named as security for the performance of the contract is always treated as a penalty. 1 Pomeroy on Equity, 736, § 443; 13 Cyc. 101; *Id.* 96; Joyce on Damages, § 1305; *Id.* § 1307; 108 Am St. Rep. 56, and cases cited; 47 N. C. 15; 7 Am Dig. 89, § 718 (7); 15 Am. Dig., Century Ed., § 163; 37 Fla. 147, 20 So. 249; 38 N. J. Law, 230. Where the different acts to be performed are of unequal degree of importance, the doctrine that the sum stipulated to be paid upon breach of a contract for the performance of several conditions is a penalty especially applies. 19 Am. & Eng. Enc. of L. 406.

Where a sum had been named as liquidated damages, and would be so treated upon a total breach, yet, upon a partial performance, the sum is treated as a penalty, and only damages actually proved could be recovered. Sutherland on Damages, § 296; 13 Cyc. 103; 63 Tex. 175; 7 Dec. Dig., § 86, p. 99; 19 Am. & Eng. Enc. of L. 408, 409; 9 Mont. 154; 40 Wis. 503. As conclusive against appellee's contention herein, see 14 Ark. 329, 333; 55 Ark. 376; 73 Ark. 432.

2.  If the sum deposited was intended as liquidated damages, there was no such breach of the contract by appellants as would forfeit the money to appellee Delight Lumber Company.  One who commits the first substantial breach of a contract can not maintain an action against the other party for a subsequent failure on his part to perform.  79 Ark. 528, and cases cited.  If there were any breaches of the contract by the appellants, they were clearly waived.

*Sam T. Poe* and *Geo. A. McConnell,* for appellee.

1.  The question "who breached the contract" is settled by the finding of the chancellor, which will be sustained unless clearly contrary to the preponderance of the evidence.

2.  The amount deposited in the bank is liquidated damages.  14 Ark. 315; Anson on Contracts 255, 335; 57 Ark. 168; 73 Ark. 432; 56 Ark. 405; 83 Ark. 144; 83 Ark. 364; 87 Ark. 52; *Id.* 545.

WOOD, J., (after stating the facts).  The appellee lumber company is not in a position to insist on a forfeiture to it of the $1,000 in controversy for the reason that a clear preponderance of the evidence shows that it committed the first substantial breach of the contract.  The contract required the lumber company to sell to appellants all hickory owned by them ten inches in diameter and up on the land mentioned in the contract.  The appellants both testified that, after the lumber company had cut a car and a half of hickory, they positively refused to cut any more.  Bowers, the agent representing the lumber company, in charge of the woods where the cutting was done, and "whose authority was recognized in all working departments," told appellants that he never intended to deliver the balance of the hickory logs under the contract.  Appellants stated that they thought there must have been some 250,000 feet left standing on the ground after the delivery of the car and a half that had been cut, containing about 7,300 feet.  This testimony of appellants was corroborated by another witness, who testified that he heard a conversation between Keopple and Bowers concerning the hickory as follows:  "They asked me how many feet I had, and I told them a little bit over 7,300 feet, and Bowers said, 'Is that all?' and I told him it was, and he said:

'We can't get out any more at that price.'" Bowers, in his testimony, denied this, but the preponderance of the evidence on this issue was in favor of appellants.

This conversation, according to the undisputed testimony, took place some time early in May, 1910. The testimony shows that the lumber company never shipped any more hickory after that time. At the time this breach of the contract occurred there was no complaint on the part of the lumber company that appellants were not complying with the contract on their part. On the contrary, the president and general manager of the lumber company testified that appellants carried out their contract "fairly well for a period of something over four months."

The testimony shows that the first car load of logs under the contract was shipped on April 16. Four months from that day would be August 16. Therefore according to the testimony of the president and general manager of the lumber company, appellants were performing their contract fairly well up until after August 16. Yet as early as August 5 the lumber company was conducting negotiations with Nickey & Sons Company, at Memphis, Tenn., for the sale of the timber which it had already contracted to appellants. On the above date, August 5, 1910, the lumber company wrote Nickey & Sons Company as follows: "We have 500,000 feet or more of extra fine white oak timber. We would like to sell you this," etc.

Again on August 9: "We stated that we had 500,000 feet or more of fine white oak. We have possibly a great deal more than this. Please let us hear from you with reference to smaller sizes by return mail" etc.

The manager of the lumber company testified that the logs referred to in the above letters were the same timber that was included in the contract with the appellants.

The above testimony shows at least an attempt on the part of the lumber company to avoid its contract with appellants at a time when it is conceded by the lumber company that appellants were satisfactorily discharging the contract on their part. The law is well settled that "he who commits the first substantial breach of a contract can not maintain an action against the other contracting party for a subsequent

ARK.]   KEOPPLE v. DELIGHT LUMBER COMPANY.   239

failure on his part to perform." *National Surety Co.* v. *Long*, 60 C. C. A. 623, and cases there cited; *National Surety Co.* v. *Long*, 79 Ark. 528.

The appellees claim that the appellants had breached the contract by failing "to keep a man in the woods to pass on all logs as they were being cut and to accept all logs," etc., and by "failing to pay on Monday morning of each week for all logs delivered in the past week."

These provisions of the contract were for the benefit of the appellee lumber company, and the testimony shows that whatever technical breaches there may have been in these particulars they were waived by the appellee lumber company. Bowers, the agent of the lumber company to make the inspection, testified concerning this as follows: "After the first week Mr. Keopple and myself had a talk, and we agreed that I knew about what he wanted, and it was not necessary for him to stay there. He didn't have anything else there to do, and I thought I could get the logs out to suit him. We agreed that he would take up the logs once a week. He agreed to come and take the logs up as often as we needed to get them out of the way. He didn't always do that; failed two or three times."

Concerning the subject of payment under the contract, the president testified that "it was satisfactory to the Delight Lumber Company for these invoices to be rendered to the firm of Keopple & McIntosh as the logs were loaded out, and for them to mail a check on receipt of these invoices for the amount thereof." And again: "It was understood that they were to mail us checks for them as soon as the invoices and bills of lading were received. That was perfectly satisfactory when they did that."

The above testimony shows that a literal compliance with the provisions of the contract as to the inspection and as to the manner of payment was not insisted on by the lumber company, but that a different arrangement from that stated in the contract was made and pursued with the lumber company's express consent.

On the 12th of September, 1910, the appellants received from the Delight Lumber Company the following telegram: "Mr. Keopple did not come to take logs today as promised.

If you fail to come or send a man to arrive here tomorrow to take logs, also pay for those shipped last week, we will consider contract void and make no further shipment of logs. Shipped two cars today.'' Yet, after sending this telegram, the testimony shows that the lumber company shipped out logs under the contract on September 14 and 15, as shown by the invoices in evidence which the Delight Lumber Company rendered to the appellants.

There is an agreement in evidence to the effect that the appellants were not indebted to the lumber company for logs shipped under the contract. Therefore, the lumber company must have received payment for the logs as shown by the invoices of the 14th and 15th of September.

As late then as the above dates, and after the lumber company had telegraphed the appellants that it would consider the contract void, we find it acting under and recognizing the existence of the contract. The testimony on behalf of the appellants tended to show that as early as possible after receiving the telegram one of the appellants went to Delight to make the inspection and take up the logs. Witness says: "When I got that telegram, I was at home; my family was sick. I went down there the next day."

All the conduct of the lumber company, as revealed by the testimony, shows that there was a waiver of any breach of the contract that might have been upon the part of the appellants. After the lumber company gave notice by the telegram that it would consider the contract void, it continued to recognize it as binding by making shipments of timber under it and accepting the payments for these shipments.

On the 19th of September, 1910, the lumber company wrote to appellants as follows: "This is to again notify you that, owing to your persistent and continued failures to come and receive our logs, as per terms of contract, as well as violations of the contract by you in other respects, we are compelled to hereafter treat the contract as void, and govern our actions accordingly." But, before the lumber company gave the appellants this notice of a final intention on their part to treat the contract as rescinded for alleged breaches thereof on the part of the appellants, it had already breached the contract on its part and abandoned same by selling the timber

included in the contract to Nickey & Sons Company of Memphis Tenn., as evidenced by correspondence of the lumber company with Nickey & Sons Company in the record which it is unnecessary to here set forth.

We are therefore of the opinion that the court erred in its finding of fact and in declaring a forfeiture. The conclusion we have reached makes it unnecessary to determine whether the provision in the contract for the deposit of $1,000 was in the nature of a penalty or for liquidated damages. The judgment is therefore reversed, and judgment will be entered here in favor of appellants for $1,000.