THE N. SAUER MILLING COMPANY *v.* STUEART.

4-5666                                    133 S. W. 2d 639

Opinion delivered November 20, 1939.

*W. C. Rodgers* and *Morrison, Nugent, Berger, Byers & Johns,* for appellant.

*George R. Steel* and *J. M. Jackson,* for appellee.

HUMPHREYS, J.   This suit was brought by appellant against appellees to recover damages in the sum of $1,009.01 for an alleged breach of a contract whereby appellees purchased from appellant 675 barrels of flour in 48 pound cotton packages or sacks, known as "Cherry Bell" flour and "Red Cherry" flour at a price of $5.60 per barrel for the "Cherry Bell" flour and $5 per barrel for the "Red Cherry" flour to be shipped on directions to be given by appellees, shipments to be scattered to February 1, 1938, which contract contained the following warranty:

"Seller expressly warrants that any flour contracted herein will be representative of the brand or grade specified herein to be sold and that any feed contracted herein to be sold will be equal to the minmium requirements of the law of the State named herein as destination. Buyer hereby waives any claim or defense based on the quality of the commodities specified herein, unless (1) within twenty (20) days after receipt of said commodities

Buyer sends Seller at Seller's main office a letter by registered mail specifying the nature of the complaint; (2) within said twenty (20) days sends by express prepaid to Seller's said office a five (5) pound sample of the goods alleged to be defective or inferior; and (3) within thirty (30) days after the arrival of said goods Buyer sends Seller at his said office an itemized verified statement of all loss and damage claimed by Buyer as a result of said alleged defective or inferior goods, provided that compliance by Buyer with the three last above enumerated steps shall not constitute an admission by Seller of the merits or amount of Buyer's claim.''

The contract contained a provision that the written instrument was a complete agreement between the parties and that same can not be changed in any manner except in writing subscribed by the buyer and a duly authorized officer of the seller.

The contract also contained provisions relative to liquidated damages in case appellees should breach the contract specifying the items that might be considered in arriving at the amount of liquidated damages.

It was alleged in the complaint that appellees ordered out a shipment of one hundred barrels of flour under the contract on January 24, 1938, and a shipment of fifty barrels on April 15, 1938, and thereafter failed and refused to order out any other shipments, whereupon, appellant terminated the contract on May 25, 1938, and demanded damages sustained by it on account of appellee's failure and refusal to order out the remaining 525 barrels of flour.

Appellees filed an answer denying the material allegations of the complaint to the effect that it had breached the contract, justifying its failure and refusal to order out the balance of the flour on the ground that it had been orally represented to them by O. E. Case, appellant's assistant manager, and John R. Wilson, appellant's traveling salesman, that the flour it was contracting to sell them was of the same grade and quality and just as good as "Red Cross" flour and "Full Cream" flour and that it would stand up with their customers and be just as satisfactory as "Red Cross" and "Full

Cream'' flour, and that such representations were false and fraudulent and known by appellant to be false and fraudulent at the time such representations were made, and that they, relying on said false and fraudulent representations as being true, were deceived, cheated, defrauded and damaged in the sum of $212.07, and by cross-complaint prayed for judgment against appellant in said sum.

An answer was filed to the cross-complaint denying the material allegations therein.

The suit was originally brought in the circuit court of Howard county, but on motion was transferred to the chancery court where it was heard on the pleadings, exhibits thereto and evidence introduced by the respective parties with the result that the chancery court dismissed the complaint of appellant and rendered judgment against it in favor of appellees on their cross-complaint for the amount of $212.07, from which decree an appeal has been duly prosecuted to this court.

The record reflects that on September 16, 1937, appellees entered into a written contract with appellant for the purchase of one thousand barrels of flour of the brands heretofore mentioned at the price heretofore mentioned which flour was to be shipped when ordered in lots designated between the date of the contract and January 1, 1938. The contract contained the same warranty heretofore set out and the same provisions with reference to the written contract being the only contract between the parties and with the same provisions relative to liquidated damages in case the flour was not ordered out. Appellees ordered out 325 barrels of said flour, but toward the latter part of December they lacked 675 barrels of ordering out as much as they contracted for, so it was mutually agreed that the balance of 675 barrels should be transferred to a new contract and so a new contract for 675 barrels remaining unshipped under the contract of September 16, 1937, was entered into on December 29, 1937, whereby the appellees were given until February 1, 1938, to order out the shipment thereof. Subsequent to December 29, 1937, a shipment of one hundred barrels of flour was made upon order of ap-

pellees of date January 24, 1938, and again on April 15, 1938, an additional fifty barrels was shipped to the appellees on their order under the new contract. The unshipped balance of 525 barrels was not ordered out, and, in accordance with the terms of the contract, appellant terminated same on May 25, 1938, and brought this suit to recover appellant's loss in accordance with the provisions in the contract relative to liquidated damages. The second contract made in December in substitution for the first contract made in September was mutually entered into without any claim for damages by either party. Appellant did not claim damages on account of the failure of appellees to order out the thousand barrels which was to be shipped by January 1, 1938, and appellees made no claims for damages on account of the grade and quality of the flour which they had ordered out and which they had sold. In other words, the new contract was wholly independent of, although made in substitution of, the original contract. The price of wheat and flour was much lower in December when the second contract was made than it was in September when the first contract was made, but the second contract was entered into on the theory that appellees were bound to pay appellant the same price per barrel as had been agreed upon in the first contract.

The evidence introduced by appellees tended to show that fraudulent representations had been made by appellant's representatives relative to the grade and quality of the flour representing that the flour sold was equal in grade and quality to Red Cross and Full Cream flour and that the sacks in which it was shipped had printed on them "Every sack guaranteed. Your money back if not satisfied. Without argument, etc." Their testimony, however, does not show that any representations were made by them relative to the grade and quality of the flour at the time the second contract was entered into although it does show that the flour which was ordered after the second contract was made had printed on the sacks or packages "Every sack guaranteed. Your money back if not satisfied. Without argument, etc."

The testimony introduced by appellant tends to show that it made no representations of any kind relative to warranties except the written warranty contained in both contracts which were exactly alike.

At the time the second contract was entered into appellees had received and sold 375 barrels of the flour covering the period between September and December without any objection being made whatever as to grade and quality of flour. They had had every opportunity to inspect and examine the flour at the time they entered into the second contract having handled, as above stated, 375 barrels of the Cherry Bell and Red Cherry flour. Some objection was made to the grade and quality of the flour shipped under the second contract by letters to appellant some time in May, 1938, and about the time appellant terminated the contract and demanded damages under the provisions thereof, but after these objections were made the undisputed evidence reveals that appellee voluntarily paid appellant for the 150 barrels of flour they had ordered shipped. Both the price of wheat and flour had decreased very materially from the time the second contract was made until same was terminated. In other words flour could be bought about the time the contract was terminated at $1.30 less per barrel than when the contract was made due to the reduction in the price of wheat.

A reading of the whole record has convinced us that according to the weight of the evidence, appellees breached the contract and in doing so became responsible for damages sustained by appellant under the terms of the contract and waived any damages they might have suffered, by voluntarily paying in full for the flour which they had ordered out and received, on account of any inferiority in the grade and quality of the sacks it had sold and had been compelled to take back from the purchasers and which they now have in their stock of flour.

We think appellees are bound by their written contract, and that the only warranty which they could rely upon was the warranty contained in the written contract which written warranty was fully complied with under the evidence by appellant. In other words there is no

evidence showing that the flour shipped or to be shipped was inferior in grade and quality to that covered by the written warranty. Especially is this true in view of the fact that the second contract relied upon and sued upon in this case was made long after the alleged false representations as to the grade and quality of the flour had been made and the opportunity it had had to inspect and examine the grade and quality of the flour between the dates of the two contracts. It certainly appears that the misrepresentations relied upon by appellees as to the grade and quality of the flour purchased did not induce them to enter into the second contract which is made the basis of this suit. The alleged misrepresentations as to the grade and quality of the flour purchased by appellees conflicted with the written provisions of the contract which written contract carried only one warranty, and even if they were made they were not made as inducements to the making of the second contract and were waived by them by paying for the flour which they had received in June, 1938.

The trial court erred in finding that appellees were entitled to recover $212.07 as damages against appellant on account of the alleged misrepresentations made by appellant to them, and in dismissing appellant's complaint for damages which it sustained under the terms of the contract by the failure and refusal of appellees to order out 525 barrels of flour.

The judgment is, therefore, reversed and the cause is remanded with directions to the chancery court to ascertain the amount of damages due appellant under the terms of the contract on account of appellees having breached same.