INTERSTATE GROCER COMPANY *v.* THE COLORADO MILLING & ELEVATOR COMPANY.

4-5728 135 S. W. 2d 661

Opinion delivered January 8, 1940

*W. G. Dinning,* for appellant.

*Brewer & Cracraft,* for appellee.

HUMPHREYS, J. This suit was brought by appellee against appellant to recover liquidated damages in the sum of $612.09 for failure to order a second car of Snowbird flour of 210 barrels capacity under and by virtue of a contract entered into by and between appellant and appellee on August 5, 1937. It was alleged that

on said date appellant entered into a contract with appellee to purchase 420 barrels of Snowbird flour in a two-car shipment, each car to contain 210 barrels of flour; that appellant gave shipping instructions on one car and that same was shipped and delivered and paid for in accordance with the terms of the contract; that appellant did not give shipping instructions on the second car and in July, 1938, eight months after the expiration of the original time of performance, advised appellee that it would not accept the second installment of 210 barrels, whereupon appellee brought suit against appellant for damages based upon the liquidated damage clause in the contract.

The written contract made the basis of this suit contained the following warranty:

"Seller expressly warrants that any flour contracted herein will be representative of the brand or grade specified herein to be sold and that any feed contracted herein to be sold will be equal to the minimum requirements of the law of the state named herein as destination. Buyer hereby waives any claim or defense based on the quality of the commodities specified herein, unless (1) within said twenty (20) days after receipt of said commodities Buyer sends Seller at Seller's main office a letter by registered mail specifying the nature of the complaint; (2) within said twenty (20) days sends by express prepaid to Seller's said office a five (5) pound sample of the goods alleged to be defective or inferior; and (3) within thirty (30) days after the arrival of said goods Buyer sends Seller at his said office an itemized verified statement of all loss and damage claimed by Buyer as a result of said alleged defective or inferior goods, provided that compliance by Buyer with the three last above enumerated steps shall not constitute an admission by Seller of the merits or amount of Buyer's claim."

It also contained a provision relative to liquidated damages in case appellant should breach the contract

by failing to order out the flour purchased and for future delivery specifying the items that might be considered in arriving at the amount of damages.

The contract also contained the following clause: ''If there is more than one installment of goods shipped or stipulated herein to be shipped, this contract shall be construed to be severable as to each installment . . . and breach or default of either buyer or seller as to any installment or installments shall not give the other party a right to cancel this contract except as herein otherwise expressly provided.''

Appellant filed an answer denying liability for failure to order the second shipment of flour for the reason that the first shipment of flour was not of the grade specified in the contract and that the agent of appellee made misrepresentations as to the grade and quality of the flour and by way of cross-complaint prayed for the damages it sustained by reason of the inferior quality of the flour contained in the first shipment.

The cause was heard to a jury and at the conclusion of the testimony the trial court directed a verdict against appellant for $612.09 and denied appellant any rights of recovery under its cross-complaint.

A verdict and consequent judgment was rendered in accordance with the direction of the court over appellant's objection and exception and it has duly prosecuted an appeal to this court from the judgment rendered by the trial court.

It is conceded that if appellee is entitled to recover in any amount, the amount adjudged to it is correct, so it is unnecessary to refer to the testimony as to the amount of damages appellee sustained, if any.

It is undisputed that appellant sold appellee 420 barrels of Snowbird flour which was a brand of flour that had been sold for a number of years in that part of the state; that no misrepresentations were made by appellee or the broker who negotiated the sale as to the quality and grade of flour intended to be sold and pur-

chased; that the quality and grade were so well known that no representations were necessary relative to the quality or grade in order to induce the sale and purchase of the flour.

Since there was no evidence of fraudulent representations which induced the contract, that issue went out of the case; but appellant contends that, since the evidence tends to show that the first shipment of flour did not meet the requirements of the written warranty in the contract, it was privileged to refuse to order out the second shipment of flour and that it had a right to rescind the whole contract. There is much evidence to the effect that the flour contained in the first shipment was inferior in grade and did not meet the requirements of the warranty contained in the written contract, and, for this reason, it is urged that the court should have submitted that issue of fact to the jury. In making this contention it overlooked the fact that the contract contained a provision that it was the duty of appellant within twenty days after receiving the flour to send a registered letter to appellee's main office specifying wherein the grade of flour was defective and by sending within twenty days by prepaid express a five pound sample of the goods alleged to be defective to the main office of appellee and also within thirty days to send a verified, itemized statement of the loss claimed by reason of the defective flour, else appellant would waive any claim or defense based on the quality of the flour. The undisputed evidence reflects that none of these conditions precedent were performed within the time specified, hence it follows that appellant cannot recover damages from or hold appellee upon the written warranty as to the quality or fitness of the flour delivered in the first car.

It was said in the case of *Yerxa, Andrews & Thurston* v. *Randazzo Macaroni Mfg. Co.*, 315 Mo. 927, 228 S. W. 20, concerning a warranty provision containing similar conditions when shown that the conditions had not been complied with that:

"It has been repeatedly ruled that similar contractual obligations are conditions precedent to be observed and performed by the buyer and he must show a compliance therewith on his part or a waiver thereof by the seller before he can recover damages from the seller or hold the seller upon a warranty express or implied as to the quality or fitness of the goods delivered by the seller." Our own court is in accord with the rule announced in the case referred to. It was said by this court in the case of *Southern Engine & Boiler Works* v. *Globe Cooperage & Lumber Company*, 98 Ark. 482, 136 S. W. 928 that: "It has been well settled that when a purchaser of machinery has agreed that if it proves defective he will give notice in a specified time, he will not be entitled to resist payment of purchase money on account of imperfection of which he did not give notice."

It was also said by this court in the case of *Carle* v. *Avery Power Machinery Company*, 185 Ark. 799, 49 S. W. 2d 599 that: "Thus it will be seen that the warranty was conditioned upon giving the notice of defect within a specified time. The agreement of warranty being in writing is controlled by the language used. It has been held by this court that contracts of this sort are lawful and must be enforced as they have been made by the parties and the test must be made within the time specified and the notice given according to the terms of the agreement. The condition that notice of defects must be given within a specified time is imperative and if the buyer does not show a compliance therewith, the buyer cannot enforce it against the seller."

Further, appellant in making the contention that it might refuse to order out the second car of flour because the flour contained in the first car was inferior in quality and grade to the flour contracted for, overlooked the following clause in the written contract, to-wit: "If there is more than one installment of goods shipped or stipulated herein to be shipped, this contract shall be construed to be severable as to each installment . . . and breach or default of either buyer or seller

as to any installment or installments shall not give the other party a right to cancel this contract except as herein otherwise provided.''

This clause in the contract is not ambiguous and clearly evinces the intention of the parties to treat each shipment of flour ordered out as severable and separable from other installments of flour ordered out and specifically provides that a breach or default of either buyer or seller as to any installment shall not give the other party a right to cancel the contract. Clauses of this character in contracts are legitimate and enforceable as will be seen by reference to the following adjudicated cases: *Yerxa, Andrews & Thurston* v. *Randazzo Macaroni Mfg. Co.*, 315 Mo. 927, 288 S. W. 20; *Habicht, Braun & Cō.* v. *Gallagher & Co.*, 172 Mich. 328, 137 N. W. 685; *Ellison, Son & Co.* v. *Grocery Company*, 69 W. Va. 380, 71 S. E. 391, 38 L. R. A., N. S. 539; *Cahen* v. *Platt*, 69 N. Y. 348, 25 Am. Rep. 203; *Krebs Hop Company* v. *Livesley*, 59 Or. 574, 114 P. 944, P. 118, P. 165, Ann. Cas. 1913C, 758.

No error appearing, the judgment is affirmed.

SMITH and HOLT, JJ., dissent.

SMITH, J. (dissenting). The first car of flour was paid for when the purchaser took up at the bank the draft to which the bill-of-lading was attached. Payment for and delivery of the flour were simultaneous acts, and no opportunity was afforded the purchaser to ascertain whether the flour conformed to the warranty until after it had been paid for and delivered. The majority opinion reflects the fact that there was testimony that this car of flour did not conform to the warranty under which it had been sold. The testimony upon that question was sufficient to have required the submission of that issue to the jury as to both cars of flour but for the fact that the purchaser did not comply with the provisions of the contract relating to a breach of the warranty as to the quality of the flour. These were that he should make written complaint within twenty days after delivery, and should return to the shipper a 5-pound package of the

flour with an itemized statement of loss sustained. The contract provided that unless the purchaser made complaint and returned the sample and the statement of the loss as required, he waived the right to complain of the breach of the warranty.

The purchaser was, therefore, not entitled to damages on account of the defective quality of the flour delivered, and the cases cited in the majority opinion sustain the ruling of the trial court to that effect.

The recent case of *N. Sauer Milling Co.* v. *Stueart, ante,* p. 210, 133 S. W. 2d 639, was a suit upon a contract identical with the one here sued on calling for the shipment of flour in installments. That suit, like this, was one for the liquidated damages, for which the contract provided, for failure to order out flour as required by the contract. In that case, as in this, there was testimony to the effect that the first car of flour shipped was not up to the grade for which the contract called. When the shipper in the Sauer case, *supra,* was sued for the damages, he denied liability, and filed a counterclaim for loss sustained on the first car.

It was decided in that case that the purchaser could not recover damages because he had not given notice and had not sent sample of the flour as the contract required. The purchaser was also held liable for the liquidated damages provided in the contract resulting from the failure to complete the order for flour. But a second contract had been made in that case after the purchaser was aware of the faulty quality of the flour, and it was there said: "It certainly appears that the misrepresentations relied upon by appellees (the purchaser) as to the grade and quality of the flour purchased did not induce them to enter into the second contract which is made the basis of this suit." In other words, the purchaser in that case made a new contract covering the balance of the flour originally purchased, and when the flour was sold and delivered it was subject to the same warranty applicable to the first shipment. Here, there was only one contract, although it recited that its provisions for two shipments of the flour should be treated

as severable contracts, but the warranty applied alike to both shipments.

Appellee here received and paid for the first shipment of flour; but the contract of warranty precluded him from recovering any damages on account of its inferiority because he did not comply with the provisions of the contract in regard to giving notice. The cases cited in the majority opinion, as well as the Sauer case, so hold. But the shipper seeks and was allowed to recover the liquidated damages for failure to order out the balance of the flour covered by the contract.

The case of *Yerxa, etc., Inc., v. Randazzo Macaroni Mfg. Co.*, 215 Mo. 927, 288 S. W. 20, cited by the majority, holds that the seller's breach or default as to one installment of a severable contract does not entitle the buyer to rescind the contract or refuse subsequent shipments on the ground that prior shipments or installments were inferior in quality or unfit for the use intended. This is true, where the shipper tenders and proposes to ship flour of the grade contracted for.

Here, the shipper insisted that the flour shipped was of the grade contracted for, and he proposed to fulfill the contract by shipping additional flour of the same grade as that first shipped. As has been said, there was much testimony to the effect that the first carload of flour was inferior in grade, certainly there was enough testimony to support a finding of the jury to that effect.

Now, the first car of flour passes out of the case regardless of its inferiority, because the terms of the warranty were not complied with; but the purchaser was under no obligation to receive additional flour which did not meet the quality warranted. The question in the case —and, under the testimony, it was one for the jury—was, whether the shipper had shipped the flour warranted, as he proposed to ship more of the same kind. Justice Holt and I think the question should have been submitted to the jury under instructions telling the jury that, if the first car shipped conformed to the warranty, the purchaser should have ordered out the balance of the flour

and was liable for the liquidated damagès; but that the purchaser would not be required to order out and pay for the second car of flour if the first car was inferior and did not comply with the warranty, inasmuch as the shipper insisted that the purchaser receive more flour of the same kind.

The majority cite the case of *Enterprise Mfg. Co.* v. *Oppenheim,* 114 Md. 368, 79 Atl. 1007, 38 L. R. A., N. S. 548, the first headnote in which case reads as follows: "One who purchases a quantity of cotton goods of a quality known as 'firsts,' to be delivered in installments, may rescind the contract in case the first few installments are seconds, which cannot be put to the use for which the first were intended."

The annotator's note to this case cites the case of *Ellison Son & Co.* v. *Flat Top Grocery Co.,* immediately preceding, 69 W. Va. 370, 71 S. E. 391, 38 L. R. A., N. S. 539—for a discussion of the question as to the right of the purchaser to rescind a contract for the purchase of articles in installments for breach as to the quality in any installment. In the annotator's note to this case, there cited, it was said: "Where the seller is required by an entire contract to make successive deliveries of the article sold, and the first deliveries fail substantially to comply with the terms of the agreement as to the quality of the goods, the purchaser, by prompt notice of his refusal further to perform, upon the discovery of the failure, may relieve himself from liability for subsequent deliveries. *McDonald* v. *Kansas City Bolt & Nut Co.,* 79 C. C. A. 298, 149 F. 360, 8 L. R. A., N. S. 1110; *Harding, W. & Co.* v. *York Knitting Mills,* 142 Fed. 228; *Enterprise Mfg. Co.* v. *Oppenheim,* 114 Md. 368, 79 A. 1007, 38 L. R. A., N. S. 548." It will be remembered that the second car of flour was never shipped.

It is familiar law that the party who commits the first material breach of a contract may not require the other party to perform the contract, and if the first car of flour did not conform to the contract the seller had no right to insist that the purchaser order out additional flour of the same inferior grade.

In the case of *Jerome Hardwood Lbr. Co.* v. *Beaumont Lbr. Co.*, 157 Ark. 220, 247 S. W. 1059, Chief Justice McCulloch, speaking for the court, said: "We recognize the well-established rule that one who first breaks a contract cannot maintain suit to recover upon it, and that the failure of one party to comply with a contract releases the other party from performance. *Missouri Pacific Ry. Co.* v. *Yarnell,* 65 Ark. 320, 46 S. W. 943; *Spencer Medicine Co.* v. *Hall,* 78 Ark. 336, 93 S. W. 985; *John A. Gauger & Co.* v. *Sawyer & Austin Lbr. Co.,* 88 Ark. 422, 115 S. W. 157; *Ford Hardwood Lbr. Co.* v. *Clement,* 97 Ark. 522, 135 S. W. 343; *Keopple* v. *Delight Lbr. Co.,* 105 Ark. 233, 151 S. W. 259; *Ensign & Co.* v. *Coffelt,* 119 Ark. 1, 177 S. W. 735."

Justice Holt and I are of the opinion that, while a verdict was properly directed as to the first car of flour, for the reasons herein stated it was error not to submit to the jury the question of liability for the second car.