## TOWNES v. OKLAHOMA MILL COMPANY.

### Opinion delivered April 6, 1908.

1. SALE—TIME OF PERFORMANCE—VENDEE'S DEFAULT.—Where a contract was entered into for the sale of 3000 sacks of bran "for September shipment, scattered through the month," evidence that the vendee's offer was accepted because of the stipulation for shipment "scattered through the month," which would enable the vendor to ship the bran as it was manufactured, and that, on account of the vendee's failure to furnish shipping directions during September, the vendor was compelled to sell part of the bran to other parties, its storage room being crowded, was sufficient to warrant a finding that the vendee's conduct prevented the performance of the contract by the vendor. (Page 599.)

2. SAME—WAIVER OF BREACH.—Where, notwithstanding the vendee's default in furnishing shipping directions for the shipment of 3,000 sacks of bran to be "scattered through the month of September" until the latter part of that month, the vendor wrote that it had been compelled to sell some of the bran elsewhere, as it had not the storage room, and that it "would now get it out as fast as possible," the vendor will not be held to have waived the vendee's default. (Page 599.)

Appeal from Pulaski Circuit Court; *Edward W. Winfield,* Judge; affirmed.

*C. P. Harnwell,* for appellant.

*F. L. Boynton* and *J. H. Harrod,* for appellee.

1. The jury's verdict on the facts will not be disturbed where there is evidence to support it, even though the evidence is conflicting. 3 Cyc. 348-351 and authorities cited.

2. Appellant cannot take advantage of self-invited error, nor be permitted to try his case in the lower court on one theory and upon a different theory in this court. 3 Cyc. 342, 343.

3. The jury were properly instructed that "if the failure of the plaintiff to give defendant shipping directions in time to ship caused the failure in shipping the 1,000 sacks, you will find for the defendant." 12 Otto 64; 43 Ia. 239; 79 Ill. 181; 10 C. B. 860; 73 N. C. 283; 63 N. Y. 365; 81 N. W. 712; 40 Ill. App. 396; 28 Hun, 141; 121 U. S. 264; 99 S. W. 701; Id. (Ark.) 80.

4. There was no contract. The contract to ship to New Orleans was broken by appellant's failure to furnish shipping tags. Defendant's letter of September 19th was clearly not an acceptance of plaintiff's proposition of September 14th nor a promise to ship 3,000 sacks of bran. 101 U. S. 43; 94 U. S. 29; 1 Benjamin on Sales, 88; 46 N. W. 607; 8 Ohio 657; 44 N. Y. 79; 11 Cent. Dig. 80-2, 88-9, 95; 9 Cyc. 267; 49 Ark. 355.

McCULLOCH, J. This is an action instituted by appellant, J. M. Townes, against the Oklahoma Mill Company to recover damages for an alleged breach of the latter's contract to sell and deliver to him 1,000 sacks of bran. The jury returned a verdict against appellant, and he appealed to this court.

Substantially all of the material facts appear from the correspondence between the parties by mail and telegraph concerning the contract and the circumstances attending its non-fulfillment.

The contract was for the sale of 3,000 sacks of bran to be delivered during the month of September, 1906, of which appellee delivered 2,000 sacks in accordance with the contract, but failed to deliver the remainder. The price of bran advanced, and appellee sues to recover the difference between the contract price and the price he was compelled to pay for it.

Appellant was engaged in business at Little Rock, Arkansas, and appellee at Kingfisher, Oklahoma, and on August 22, 1906, they entered into a contract by wire for the sale of 3,000 sacks of bran "for September shipment scattered throughout the month." The bran was to be shipped to Little Rock. Subsequently, on August 25th appellant changed the shipping direc-

tion and requested shipment to New Orleans, and stated in his letter communicating the request that he was then having papers gotten up for compliance with the laws of the State of Louisiana concerning the sale and inspection of bran in that State. Appellee replied on August 27th consenting to this change, but requested that appellant furnish tax-tags required by the Louisiana law without delay, "so that we can get right to work on your shipment." Appellant wrote again on August 29th as follows: "I have yours of the 27th regarding the bran to New Orleans, asking me to furnish tags required without delay. I have ordered the tags forwarded, and am expecting them today. As soon as they are received, will express them at once and give you full instructions."

Nothing further transpired until September 14, 1906, when appellant wrote to appellee requesting that the bran be shipped to Little Rock, instead of New Orleans. Appellee replied to this by letter dated September 17th, stating in substance that it had been waiting for the Louisiana tax-tags, and, on account of the delay, doubted its ability to ship the bran during the month, but would make best effort to do so.

On September 19th appellee sent the following letter to appellant: "We have your D-M of E-D asking how much bran we have in transit, to wire numbers, as you were needing it badly, and we sent you collect message advising you we were loading Rock Island car No. 57210 today with 600 sacks, further stating that we could not quote more bran, which we now confirm. We sent this message at your expense because delay in getting bran out to you is not our fault. Since we had your letter some time ago advising us to hold this bran until we got shipping instructions and tax tags to ship this bran to Louisiana, we were thus compelled to sell some bran elsewhere, as we had not the storage room, consequently we were behind on this bran. We will now get it out as fast as possible."

Appellee subsequently delivered 2,000 sacks during the month, but failed to deliver the remainder, and refused to do so in November when specific demand for it was made.

The secretary and manager of appellee company testified, in substance, that appellee manufactured all the bran it sold, and that when the contract was made with appellant for the sale

of 3,000 sacks for September delivery this, with other contracts already entered into, took up the normal capacity of the mill for the month, and that appellant's offer was accepted because of the stipulation for shipment "scattered through the month," which enabled appellee to ship the bran as it was manufactured; that a quantity of bran was allowed to accumulate during the first part of the month of September in anticipation of directions from appellant, accompanied by the necessary Louisiana tax-tags, and, on account of the delay and the overcrowded condition of storage room, appellee was compelled to sell 1,000 sacks of bran which had been reserved for appellant to other parties in order to get rid of it; and that, after receiving appellant's letter of September 14th containing directions to ship the bran to Little Rock, it was then impossible for appellee to furnish him 3,000 sacks and at the same time comply with its contracts with other parties for September delivery. He testified that appellant's letter of September 14th was not received until September 17th, and that the reply hereinbefore referred to was sent the same day.

The court, by proper instructions, submitted to the jury the question whether or not the failure of appellant to furnish shipping directions prevented appellee from performing the contract.

It is an elementary principle, needing no citation of authority in support, that there is no breach of a contract where performance is prevented by the conduct of the other party. The party whose own conduct prevents performance of a contract cannot complain of non-performance.

The evidence in this case is sufficient to warrant a finding that appellant's failure to furnish shipping directions prevented the performance of the contract by appellee. The contract called for deliveries "scattered throughout the month of September," and appellee had the right to insist on delivery of a part of the bran during the first half of the month, and if appellant prevented this he thereby absolved appellee, *pro tanto,* from performance of the contract.

The promise contained in appellee's letter of September 17th to "do the best they could" to perform the contract and to "ship as fast as possible," notwithstanding appellant's previous

hindering conduct, was no more than the obligation of the
original contract required of it, and was not a waiver of the
first breach by appellant. *Graves* v. *Melio,* 81 Ark. 347.

The contract called only for September deliveries, and
there was no agreement either to deliver or to receive after that
time. The price of bran was advancing all the time, and, since
appellant had by his conduct prevented delivery during the
early part of the month at the contract price, no obligation
rested upon appellee to deliver after the expiration of the
month and the price had advanced.

Appellee's letter of September 17th did not constitute, as
contended by counsel for appellant, a new contract for the
sale of 3,000 sacks of bran. The language is not susceptible
of that construction. The letter called attention to appellant's
failure to discharge his duty with reference to performance of
the contract, and merely promised to do all that could be done
toward performance of the contract, notwithstanding his short-
comings. It was a voluntary promise entirely on the part of
appellee, and added nothing to its obligation.

The only disputed questions of fact in the case were fairly
submitted to the jury, and we find no prejudicial error in the
proceedings.

Judgment affirmed.