GRAYSON-MCLEOD LUMBER COMPANY *v.* SLACK.

Opinion delivered January 15, 1912.

1. CONTRACT—CONSTRUCTION.—A contract for cutting timber off the lands of appellant which reserved in the appellant the right to change any part of such contract did not authorize appellant to abrogate the the contract.   (Page 81.)

2. SAME—FORFEITURE—WAIVER.—Where one party to a contract, with knowledge of a breach of contract by the other party, suffered the latter to continue in performance of the contract, he will be held to have waived the right to insist upon a forfeiture.   (Page 82.)

Appeal from Clark Chancery Court; *James D. Shaver,* Chancellor; affirmed.

*John H. Crawford,* for appellant.

*Thomas C. McRae, W. V. Tompkins* and *D. L. McRae,* for appellee.

McCULLOCH, C. J. Appellant, Grayson-McLeod Lumber Company, owned large bodies of timber land in Clark and Pike counties, in the State of Arkansas, and on November 23, 1909, entered into a written contract with appellees, whereby the latter were to cut the timber and convert same into railroad ties, piling and staves, and deliver same to appellant for certain stipulated prices. The contract (omitting caption) reads as follows:

"That the parties of the second part agree to cut all oak timber from the lands of the first party in Clark and Pike counties, and deliver on the track of the A. V. R. R. [Antoine Valley Railroad] as per instructions and orders given them as follows:

"All oak timber large enough to make 6x8 8 ft. ties, either red or white oak, to be made into standard 6x8 ties and delivered at the track at 26 cents each for white oak, and red oak 23 cents, No. 2's 13 cents each.

"All white oak timber too large for 6x8 ties and not large enough for piling to be made into 7x9 8 ft. ties, and delivered at track for 32 cents each.   No. 2, 7x9 ft. ties, 26 cents each.

"All white oak that will make piling up to 40 or 45 feet to be cut into piling, Missouri Pacific specifications, and delivered at track for 4½ cents per lineal foot.

"All oak too large for piling to be made into whisky barrel staves and delivered at track at $16.50 per thousand. Rejects at $7.00 per thousand.

"All white oak timber not large enough for staves and will make bolts to be cut into bolts and delivered at track for $4.00 per cord.

"For piling cut along the A. S. W. or G. & F. S., and delivered at a switch where they can be conveniently loaded 7 cents per lineal foot f.o.b.

"All white oak ties 7x9 8 ft. delivered at switch f.o.b. 46 cents each.

"All white oak ties 6x8 8 ft. delivered on right-of-way of either the A. S. W. R. R., (Arkansas Southwestern Railroad), or the G. & F. S. R. R. (Gurdon & Fort Smith Railroad) 36 cents each.

"The last three items, viz: the 7x9 8 ft. and the 6x8 8 ft. and the piling are not to be cut from lands owned by Grayson-McLeod Lumber Company.

"The Grayson-McLeod Lumber Company reserves the right to change any part of this contract.   All above to be paid for net cash after acceptance by the first party."

Appellees proceeded to cut the timber, and continued until July 23, 1910, when appellant served written notice on them to the effect that it claimed the right, under the stipulations of the contract, to terminate it, and had elected to do so.   The notice was in the form of a letter addressed to appellees, and reads as follows:

"With reference to the contract placed with you on the 23d day of November last, with reference to getting out staves and piling, the directors of the consolidated concern have decided that we would not make any more ties, staves or piling from the lands in Clark County and Pike County for the time being; and, as our contract provides that we may terminate it any time, we will have to ask you to consider the contract null

and void after August 1, 1910. If at some later date we decide again to work ties, staves and piling, we will be glad to figure with you in the proposition."

Appellees declined to cease work under the contract, and on August 5, 1910, appellant commenced this action to restrain them from cutting timber on the lands in question.

Appellant, in its complaint, sets forth the contract and claims the right to terminate it under the last clause, and, in an amendment to the complaint, it alleges that appellees had violated the contract in manufacturing cross-ties from timber on the land and selling same to other parties.

Appellees, in their answer, denied violating the contract, and also disputed the right of appellant to terminate it under the last clause thereof.

The chancery court, on hearing proof, entered a decree dismissing the complaint for want of equity.

The principal contention of learned counsel for appellant is, that the last clause of the contract gives the right to terminate it. That clause reads as follows:

"The Grayson-McLeod Lumber Company reserves tne right to change any part of this contract."

Now, the use of the word "change" does not include the right to abrogate the contract. It means something else, that is, to alter or to make different. But if the effect contended for now was intended by the parties, different language, more appropriate to convey that meaning, would have been employed. It is shown that the contract was not prepared by one learned in the law, but was written by Mr. William Grayson, the president of appellant company, who was a good business man, and is presumed to have understood the ordinary terms applicable to his methods of business. It is inconceivable that, if a man of that kind intended to reserve the right to abrogate the contract, he would have inserted the language which he used in this contract. The only fair construction to be placed on the contract is that it means what it says, that is, that the owner of the timber should have the right to change the contract, but not to abrogate it. It is susceptible of that meaning without destroying the contract, but to adopt the interpretation insisted upon by appellant would be to destroy the contract in its inception, because, if that is what it meant, it had no binding

force upon appellant at all. The interpretation which we place upon the language is consistent with other parts of the contract, which could be changed without abrogating the contract itself. The primary object of the agreement was that appellees should cut all the timber on the lands named for certain stipulated prices. The owner was given the right to direct how the timber should be cut, and the parties in the instrument itself undertook to specify how it should be cut and into what articles it should be manufactured, and the dimensions thereof. It was seen fit to insert the last clause so as to give the right to change the contract in those respects, but we can not agree that it gave the right to terminate the contract altogether.

We think that the chancellor's interpretation of the contract was correct, and his decree should not be disturbed.

It is next contended that appellees violated the contract by cutting two lots of railroad ties and a lot of staves and disposing of them to other parties. One of the lots of ties was cut on the Arkansas Southwestern Railroad. E. T. Slack, one of the parties, explains this transaction by stating that, prior to the date of the contract with appellant, the latter had entered into a contract with one Lintz for the cutting of the timber on some of the land, and that, before the execution of the contract with appellees, Lintz authorized him (witness) to cut the timber, and he did so under the impression that there had been a renewal of the Lintz contract, and he thought he was cutting that particular timber under the Lintz contract, and not under the contract of appellees with appellant. This occurred a considerable length of time before appellant decided to terminate the contract.

The other transaction relates to a lot of ties cut on the Gurdon & Fort Smith and Arkansas Southwestern railroads, and sold by Mr. Slack to one Gerner. This lot of ties is referred to as those cut by the Couches. Slack explains this by stating that he had a conversation with Mr. Grayson before his death in which the latter agreed for him to put the ties out on the Gurdon & Fort Smith Railroad. He calls attention to the fact that under the contract those ties were not to be made from timber cut on appellant's land, and said that he could at that time have bought ties cheaper than appellant was to pay for them; that he notified appellant's manager, Mr. Burns, and,

after ascertaining that appellant couldn't handle ties on the Gurdon & Fort Smith Railroad or the Arkansas Southwestern Railroad, and having an opportunity to sell them to another party, he did so.  The evidence does not warrant a finding that appellees, in either of the transactions referred to attempted to perpetrate a fraud upon appellant or to violate the contract in any respect.  All that was done in those transactions was done openly and under a claim of right.  Appellant, on discovering the mistake, did not claim the right to insist upon a forfeiture, but, on the contrary, suffered appellees to continue in performance of the contract, and later, when appellant saw fit to declare a forfeiture, or, rather, to terminate the contract, it did so under a claim of right to do so under the language of the contract itself, and not on account of any alleged violation thereof.  Appellant was paid in full for the ties and lost nothing in the transaction.  It was appellant's duty, when it discovered the apparent breach of the contract, if it intended to insist upon a forfeiture, to do so at once.  By permitting appellees to proceed with the performance of the contract, it waived the breach. It is very apparent, from the testimony and from the pleadings in the case, that the claim of a breach of the contract on the part of appellee is an afterthought, and was not asserted at the time appellant first claimed the right to terminate the contract.

There is no merit in appellant's contention, and the chancellor was correct in dismissing the complaint.

Decree affirmed.