INTERNATIONAL SHOE COMPANY *v.* WALDRON.

4-5889                                138 S. W. 2d 1046

Opinion delivered April 8, 1940.

*Cunningham & Cunningham,* for appellant.

*George M. Booth,* for appellee.

HOLT, J. Appellant, International Shoe Company, brought suit in the Randolph circuit court against appellees, Rufus Waldron, Bill Waldron, and Earl Trammell, doing business as T. & R. Cash Store, alleging an indebtedness due it in the amount of $617.71 with interest thereon at six per cent. from October 6, 1938, on an open account for shoes purchased by appellees.

Appellees answered denying the indebtedness and filed a cross-complaint in which they alleged that February 1, 1934, they entered into an oral contract with appellant whereby it was agreed that appellees should have the exclusive agency and right to sell, in Pocahontas, Arkansas, a brand of shoes known as the "Peters Brand," and that pursuant to this agreement appellees bought this brand of shoes from appellant during the years 1934, 1935, 1936, 1937, and 1938.

They further alleged that appellant breached this contract beginning with 1935 by selling Peters Brand Shoes to Hubbell's Shoe Store in Pocahontas, Arkansas, and has continued to sell to the Hubbell Store, in violation of the contract, up until the time this suit was filed and on account of said breach sought damages from appellant in the sum of $2,000.

Appellant answered the cross-complaint denying the material allegations thereof and in addition alleged, among other things, that, if the sale of shoes to the Hubbell Store were a breach of the contract on the part of appellant, appellees waived such breach.

A trial to a jury resulted in a verdict in favor of appellees, and from a judgment thereon comes this appeal.

On the record there is no dispute as to the material facts. If appellees owe anything to appellant they admit the amount sued for is correct. About February 1, 1934, an oral contract was entered into between appellant and appellees whereby appellees were to have the exclusive agency in Pocahontas, Arkansas, for a brand of shoes called the "Peters Brand." There is no evidence that the contract attempted to bind appellees to buy shoes in any definite quantities or for any definite length of time. Appellees bought shoes from appellant throughout 1934, 1935, 1936, 1937, and 1938. In 1935, appellees learned that appellant was selling Peters Brand shoes to the Hubbell Store. They complained to appellant, but continued to make purchases from appellant, and sometime in October, 1937, upon renewing their complaint to appellant, appellees were informed that appellant intended to continue to sell the Hubbell Store for the reason that this store was in a chain of some thirty-five stores to which it was obligated to sell. Appellees did not deny that they bought Peters Brand shoes in the .amount of $3,277.43 in 1936, and in 1937 in the amount of $3,337.07.

· The record further reflects that appellees purchased Peters Brand shoes from appellant many times during the period from October, 1937, until the latter part of March, 1938, in various amounts totaling $1,454.11.

It is undisputed that appellees, after they learned that appellant first breached the contract in 1935, by selling to the Hubbell Store, continued to buy shoes from appellant in various amounts, as above indicated, right along through the years until March, 1938.

While the evidence in this record is unsatisfactory on the question whether a valid and binding contract was entered into, if we assume that such a contract were made, we are clearly of the view that appellees have waived any claims or rights they might have had under the contract by continuing to purchase shoes from appellant

after they first discovered the breach in 1935 and failing to declare a forfeiture at that time.

In *Grayson-McLeod Lumber Company* v. *Slack*, 102 Ark. 73, 143 S. W. 581, this court said: "It was appellant's duty, when it discovered the apparent breach of this contract, if it intended to insist upon a forfeiture, to do so at once. By permitting appellees to proceed with the performance of the contract, it waived the breach. It is very apparent, from the testimony and from the pleadings in the case, that the claim of a breach of the contract on the part of appellee is an afterthought, and was not asserted at the time appellant first claimed the right to terminate the contract." See, also, *Clear Creek Oil & Gas Company* v. *Brunk*, 160 Ark. 574, 255 S. W. 7.

Appellees rely strongly on the case of *International Shoe Company* v. *King*, 186 Ark. 799, 56 S. W. 2d 171, to support the judgment in this case. We cannot agree that this case controls here. The facts are materially different. In that case, King, immediately upon learning that the contract had been breached, packed all shoes he had on hand and returned them to the International Shoe Company, and this court properly held that the contract had been fully carried out, and that King had the right when he learned of the breach, to return the shoes and secure credit for them. In the instant case, as has been indicated, appellees continued to buy after learning of the breach and appellant continued to sell to them.

While appellant did not ask for an instructed verdict at the close of all the testimony, it did offer instruction No. 2, which the court refused to give. That instruction is as follows: "If you find that there was a contract between the parties to this suit under which Waldron was to have the exclusive sale of Peters Brand shoes in the city of Pocahontas for an indefinite length of time and that plaintiff, International Shoe Company, violated said contract by selling shoes to another dealer in Pocahontas, this gave Waldron the right to terminate the contract and return the stock which he had on hand at that time which had been bought under the contract,

and if he failed to do this as soon as he learned that another party was selling Peters shoes in Pocahontas, but continued to buy Peters shoes from the plaintiff, then he waived all right to any claim for breach of the contract, and, if you find that this was the case, your verdict should be for the plaintiff for the amount sued for."

On the evidence, as presented in the record, the court erred in refusing this instruction, and since the material facts are undisputed, we think the effect of this instruction amounted to a request for an instructed verdict in favor of appellant on the testimony.

The judgment of the circuit court is, therefore, reversed, and judgment will be entered here for appellant for the amount of the indebtedness, $617.71, as stated in the complaint.