ARKANSAS MUNICIPAL BOND BUREAU, INC., *v.* FOUKE SPECIAL SCHOOL DISTRICT No. 15.

4-6582                                          158 S. W. 2d 28

Opinion delivered January 26, 1942.

*T. B. Vance,* for appellant.

*Ben E. Carter* and *Willis B. Smith,* for appellee.

HOLT, J. Appellant, Arkansas Municipal Bond Bureau, Inc., sued appellee, Fouke Special School District No. 15, in the Miller chancery court to recover a commission, alleged to have been earned under a written contract whereby appellant was employed to refund the district's outstanding bonds in the amount of $39,500. Upon a trial, and at the conclusion of appellant's testimony, the court, on appellee's motion, found the issues for appellee, dismissed appellant's complaint and entered a decree accordingly. This appeal followed.

The material facts in this case are undisputed. January 30, 1939, the parties here entered into a written contract containing, among others, the following provisions:

"7. The district will not be obligated for any payments, fees, or expenses, except advertising, recording and abstract of title, unless and until the holders of 75 per cent. of all the bonds have given written agreements to refund under this plan.

"8. Within 90 days from the date hereof you are to report to the board the progress you have made, and if you have failed to obtain the consent of the owners of 50 per cent. of the bonds to refund, the board of directors will have the option of canceling this contract without any cost to the district. If 50 per cent. of the owners have given you agreements to refund, then this contract is automatically extended for an additional 90 days.

"9. We agree to pay you eleven hundred eighty-five and no/100 dollars when and as the bonds are exchanged as compensation for your services and expense in refunding as outlined above. . . .

"10. In case you obtain the consent of the owners of 75 per cent. of the outstanding bonds to refund under the above plan, and the school district decides not to re-

fund, then you are to receive $500 as your fee for compensation and expense.''

Of the $39,500 in outstanding bonds of appellee district, T. J. Raney & Sons owned $11,500, which is more than 25 per cent. Appellant proceeded in an effort to procure the Raney bonds for refunding, it being necessary to procure these bonds to enable appellant to obtain 75 per cent. of the outstanding bonds to earn the commission of $500 provided for in § 10 of the contract, *supra*. Negotiations with Raney continued until July 28, 1939, when Raney & Sons informed appellant that they were in doubt as to the validity of the refunding plan; that they had discussed this matter with William Clancy, who owned $13,000 of the bonds, and that they and Clancy wanted a decision from the Supreme Court of Arkansas to settle this question. At this time appellant had already procured the Clancy bonds for refunding. Immediately thereafter, appellant filed the suit suggested and prosecuted same to a successful conclusion in the case of *Houston School District No. 39 of Perry County* v. *Commercial National Bank of Little Rock*, 199 Ark. 683, 135 S. W. 2d 677. The decision in this case was handed down January 15, 1940.

Appellee on July 21, 1939, at a time when it knew that appellant had not succeeded in acquiring the Raney bonds and the consent of 75 per cent. of the owners of the outstanding bonds, executed and delivered certificates of indebtedness for $1,185 in favor of the appellant, covering the maximum compensation appellant could have earned under the contract. It will be observed that this was approximately 172 days after the contract of employment, dated January 30, 1939, and was within a few days of the expiration of the first and second 90-day periods referred to in § 8 of the contract.

September 18, 1939, appellee district purchased the Raney bonds in the amount of $11,500 for 90 cents on the dollar after having borrowed the money with which to purchase from the state's Revolving Loan Fund.

October 19, 1939, appellant notified appellee of the attitude of Raney & Sons and Clancy, and of appellant's

purpose to file the suit in question. Appellee made no objection to this procedure, and until this time appellee had not indicated to appellant that it would take advantage of the time element in the contract, *supra,* as a defense to the commission claimed.

It will be observed that at the time appellant, on October 19, 1939, informed appellee district of its intention to file the Perry county suit to clear up objections raised by Raney & Sons and Clancy, appellee was then the owner of the Raney bonds, having purchased them September 19, 1939, and unless appellee would agree to include them among the bonds procured by appellant for refunding, it would be impossible for appellant to procure the necessary 75 per cent. of the outstanding bonds. Appellee gave no notice or indication to appellant that it was not going to refund under the terms of the contract in question until February 19, 1940, when it wrote appellant it had ''officially decided not to refund the outstanding bonds.''

It is undisputed that up to this time appellant had performed a great amount of service, been put to considerable expense in prosecuting the litigation, *supra,* and in its efforts to refund.

At the time of the filing of the Perry county suit there was pending in the Federal District Court at Texarkana a suit by Paul D. Speer, trustee, against the appellee district, involving the bonds sought to be refunded under the contract involved here, and it became necessary to adjust and dismiss that suit before the examining attorney would give his approving opinion of the refunding bond issue.

August 25, 1939, the appellee district, upon agreement with appellant, procured an order to continue this Speer case in the federal court. In this order, appellee agreed that it had made arrangements to refund its outstanding bonds and directed the State National Bank, where its funds were deposited, to remit $742.70 to the Commercial National Bank at Little Rock, the trustee under the refunding bond issue, to be utilized by the appellee district ''in the payment of the trustee's and

attorney's fees and other expenses in connection with the new refunding bonds.''

September, 1939, appellee district, at the instance of appellant, agreed to a continuance of the Speer case in the federal court.

October 4, 1940, appellee wrote the attorney and trustee of the holders of the bonds to be refunded and also wrote appellant proposing to pay 95 cents on the dollar for the bonds plus accrued interest, and to pay appellant $550 for services rendered under the contract.

It further appears that appellant procured from bondholders bonds to be refunded amounting to $24,000, not including the $11,500 in bonds held by Raney & Sons. In this $24,000 held by appellant was included the $13,000 in bonds owned by William Clancy of Chicago, Illinois. According to Clancy's written ''agreement to refund bonds'' executed on June 14, 1939, the right given to appellant to refund this block was to expire 60 days thereafter. However, according to appellant's undisputed testimony, Mr. Clancy surrendered his bonds to appellant for refunding after the expiration of the 60 days stipulated in the agreement, and agreed to the refunding. Mr. Clancy did not testify. It appears that Clancy joined Raney & Sons the latter part of July, 1939, in the request that appellant bring the test suit in Perry county, *supra*.

The question presented here is whether time was of the essence of the contract and, if so, whether appellee, on the evidence before us, waived a strict compliance with the contract and by its actions and conduct is estopped from asserting forfeiture under its terms. After a careful review of the record, we have reached the conclusion that a preponderance of the testimony supports appellant's theory that appellee has by its actions and conduct waived the time element of the contract and is estopped to claim a forfeiture, and that appellant has earned and should recover the commission of $500 provided for in § 10.

It will be observed that appellee on July 21, 1939, approximately 172 days after the execution of the con-

tract in question, and within about eight days of the expiration of the 180-day time limit, executed certificates of indebtedness for $1,185 in favor of appellant, the maximum amount that it could have earned under the contract. Following this action, appellee again recognized that the contract was in full force and effect by agreeing to the federal court order of August 25, 1939, *supra,* and again in September, 1939, entered into an agreement to a continuance of this same case. It further appears that appellee, by its letter of October 4, 1940, to the attorney and trustee of the holders of the bonds to be refunded, and to appellant, in which it offered to pay 95 cents on the dollar for the bonds, plus interest, and to pay appellant the sum of $550 for services rendered, showed that it again recognized that its contract with appellant was in full force and effect.

Until appellee notified appellant by letter under date of February 19, 1940, that it did not intend to refund the bonds under its contract with appellant, it had given appellant no intimation that such was its intention.

When appellee on September 18, 1939, purchased the Raney block of bonds amounting to $11,500 at 90 cents on the dollar with money borrowed from the State Revolving Loan Fund, it knew that unless these bonds were added to the $24,000 in bonds which appellant was holding it would be impossible for appellant to procure the 75 per cent. of the $39,500 of outstanding bonds required under § 10 of the contract. When appellee refused to surrender the Raney bonds to appellant, the effect was to refuse to refund under the terms of § 10 of the contract, as was appellee's right. However, when it did so refuse, it became liable to appellant in the amount of $500 "for compensation and expense" provided in § 10.

Equity enjoined upon appellee the duty to make known to appellant prior to the expiration date of the contract what its intentions were or be held to have waived any claim of forfeiture. The rule seems to be well settled that one party to a contract, containing a time limitation, who induces the other party, after the expiration of the limit, to continue in performance of

the contract, will not be permitted to deny liability because the contract was not performed within the specified time.

As indicated, we think appellee by its actions and conduct is estopped to claim a forfeiture.

The rule announced in *Stiewel* v. *Lally,* 89 Ark. 195, 115 S. W. 1134, applies here. There, this court said: "The evidence shows that throughout the summer of 1903, after the expiration of the time limit in the contract, appellees were in frequent correspondence with Daughtery concerning the sale of the property to him and his associate, Albers, and that when this correspondence ceased in September it was with a distinct intimation from Daughtery that the negotiations were to. be resumed after the beginning of the succeeding year. . . . Appellant knew . . . that these negotiations were going on, and he offered no objection, but on the contrary encouraged appellees by his conduct to proceed with the negotiation and expend their time and energies in procuring a purchaser. If this was true, he waived the time limit in the contract. . . . A familiar principle of law [is] that a party to a contract containing a limitation as to time for performance, who induces the other party after the expiration of the limit to continue in the performance of the contract will not be permitted to withhold the fruits of the contract because it was not performed within the specified time."

In *Grayson-McLeod Lumber Company* v. *Slack,* 102 Ark. 79, 143 S. W. 581, this court said: "Appellant, on discovering the mistake, did not claim the right to insist upon a forfeiture, but, on the contrary, suffered appellees to continue in performance of the contract, and later, when appellant saw fit to declare a forfeiture, or, rather, to terminate the contract, it did so under a claim of right to do so under the language of the contract itself, and not on account of any alleged violation thereof. . . . It was appellant's duty, when it discovered the apparent breach of the contract, if it intended to insist upon a forfeiture, to do so at once. By permitting appellees to proceed with the performance of the contract, it waived the breach."

In *Dickinson* v. *McKenzie,* 197 Ark. 746, 126 S. W. 2d 95, this court, quoting from *Townes* v. *Oklahoma Mill Company,* 85 Ark. 596, 109 S. W. 548, said: ''It is an elementary principle, needing no citation of authority in support, that there is no breach of contract where performance is prevented by the conduct of the other party. The party whose own conduct prevents performance of a contract cannot complain of non-performance.''

In *Ekins* v. *Aliceville,* 170 Ark. 195, 279 S. W. 379, this court said: ''He [appellant] claims that under the original contract the time for performance expired at the end of sixty days and that after this time the plaintiff was under no legal obligation to take the bonds. In carrying out and applying the rule of law above announced, the parties to a contract may modify or waive their rights under it and engraft new terms upon it by letters, and in such case the promise of one party is the consideration for that of the other. In other words, a contract may be varied by the parties before performance for the reason that the power to enter into the contract equally authorizes them to abrogate or modify it, and this right to change or modify the contract equally extends to a change in the time of performing it.'' See, also, *Little Rock Granite Co.* v. *Shall,* 59 Ark. 405, 27 S. W. 562.

For the error indicated, the decree is reversed, and the cause remanded with directions to enter a decree in conformity with this opinion.