Tulsi K. BHARODIA *et al. v.*
Norman and Linda PLEDGER

CA 98-138             990 S.W.2d 581

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered May 26, 1999

*Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd.*, by: *Susan Gordon Gunter*, for appellants.

*Morgan Welch & Associates*, by: *Morgan E. Welch* and *Donald K. Campbell*, for appellees.

JOHN MAUZY PITTMAN, Judge. The appellants in this specific-performance case, Tulsi Bharodia and Amratben Patel, executed a contract whereby they agreed to purchase appellees' house for $425,000. Various conflicts arose, and appellants attempted to withdraw from the agreement. Appellees sued for specific performance and, after a hearing, the chancellor ordered appellants to specifically perform the contract. From that decision, comes this appeal.

For reversal, appellants contend that the chancellor erred in denying their summary-judgment motion based on election of remedies; in granting specific performance where appellees had already elected a different remedy by refusing to return the earnest money; in retaining jurisdiction where appellees had an adequate remedy at law; in failing to give effect to the contractual provision requiring appellees to provide a disclosure statement; in granting specific performance where appellees were in violation of the terms of the contract; and in awarding attorneys' fees in the exact amount of the earnest money. We find no error, and we affirm.

The transaction out of which this appeal arises began on August 3, 1994, when appellants offered to purchase appellees' house for $425,000. Appellants extended their offer to appellees by filling in the pertinent blank spaces in a four-page form contract provided to them by their real estate agent. When appellants made their offer, they deposited $5,000 in earnest money with appellees' real estate company. The next day appellees accepted the offer.

The parties' contract contains a provision that requires the seller to make a timely disclosure to the buyer of the condition of the house. In pertinent part, this provision states:

> Seller will provide to Buyer a disclosure about the condition of the Property which will contain information that it is true and correct to the best of the Seller's knowledge. The disclosure will be presented to Buyer within three (3) business days of acceptance of this offer. Buyer has three (3) business days after receipt of disclosure to accept or reject said disclosure. If Seller fails to provide the disclosure in a timely manner, or if Buyer finds the disclosure unacceptable within three (3) business days after receipt, this contract may be declared null and void by the Buyer, with Buyer to receive a refund of the earnest money.

It is undisputed that appellees failed to comply with this provision of the contract when they failed to make the requisite disclosure to appellants by August 9, 1994, which was three business days after the date upon which the offer was accepted.

On August 15, 1994, appellants delivered to appellees' real estate agent a writing entitled "Addendum To Offer and Acceptance." In the addendum, appellant Bharodia stated that appellants wished to be released from the contract because the house had many structural defects and needed a great many repairs. Appellants attached to the addendum a report prepared by an inspector that they had hired to examine the house. Significantly, no mention of appellees' failure to provide a disclosure statement was made in this addendum; instead, the issue was not raised until September 9, 1994, when appellants' counsel sent appellees' real estate company a letter requesting that appellees return to appellants their $5,000 in earnest money.

Appellees' real estate company interpled appellants' $5,000 in earnest money into the registry of the chancery court. In April 1995, appellees filed in chancery court a complaint requesting specific performance of the contract. In May 1995, appellants filed an answer to appellees' complaint. In their answer, appellants pled as a defense to specific performance that appellees had failed to comply with the provision of the contract requiring them to make a written disclosure of the condition of the house within three

business days of appellees' acceptance of the offer to purchase the house.

Trial was held in April 1997. After hearing the testimony of the parties, the real estate agents involved in the transaction, and other witnesses, the chancellor took the case under advisement. On July 14, 1997, the court handed down an order granting appellees' request for specific performance. In its order, the court found that appellees had breached the contract provision requiring them to make a written disclosure of the condition of the house within three business days of their acceptance of appellants' offer. However, the court found that appellants waived their right to declare the contract void. The court set forth this finding in its order as follows:

> [Appellants] in terminating the contract on August 15, 1994, did not list as one of their reasons the failure to receive the sellers' disclosure statement . . . . The Court finds that [appellees] have the burden of proof to show that the [appellants] received the sellers' disclosure statement. There is no signed receipt by [appellants] of receiving the disclosure statement and no corroborating evidence that [they] actually received the document. Since the burden of proof is on [appellees] to prove that [appellants] received the document, the Court finds that [appellees] failed in their burden of proof. Therefore, the Court finds that [appellants] did not receive the sellers' disclosure statement.
>
> [Appellants] terminated the contract with [appellees] by stating that there were alleged structural defects in the home. [Appellants] did not give as one of the reasons for termination the failure to receive the disclosure statement. Even though [appellants] had a right to terminate the contract for not receiving the disclosure statement, the Court finds [appellants] waived their right to terminate the contract using that as a reason . . . .

The court also entered an order awarding appellees' counsel an attorney's fee of $5,000.

The standards we apply when we review a chancery court's decision are well established. Although we try chancery cases *de novo* on the record, we do not reverse unless we determine

that the trial court's findings of fact are clearly erroneous. *Jennings v. Burford*, 60 Ark. App. 27, 958 S.W.2d 12 (1997). In reviewing a chancery court's findings of fact, we give due deference to the chancellor's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Id.* A chancery court's finding of fact is clearly erroneous when, although there is evidence to support the court's decision, after looking at all the evidence we are left with a definite and firm conviction that a mistake has been committed. *Bishop v. Bishop*, 60 Ark. App. 164, 961 S.W.2d 770 (1998); *Lowell v. Lowell*, 55 Ark. App. 211, 934 S.W.2d 540 (1996). Furthermore, we do not reverse a trial court's determination that a party breached a contract unless we conclude that the trial court's determination was clearly erroneous. *See Schueck v. Burris*, 330 Ark. 780, 957 S.W.2d 702 (1997); *Jocon, Inc. v. Hoover*, 61 Ark. App. 10, 964 S.W.2d 213 (1998).

■ Appellants first contend that the chancellor erred in denying their summary-judgment motion based on election of remedies. We are unable to address this issue, however, because in the absence of special circumstances not applicable here, the denial of a motion for summary judgment is not subject to review on appeal. *Daniels v. Colonial Ins. Co.*, 314 Ark. 49, 857 S.W.2d 162 (1993).

■ ■ Appellants next contend that the chancellor erred in granting specific performance where appellees had already elected a different remedy by refusing to return the earnest money. Appellants argue that appellees elected the remedy of keeping the $5,000 in earnest money, and that appellees are therefore barred by the election-of-remedies doctrine from seeking a different remedy, i.e., specific performance of the contract. Election of remedies is an affirmative defense that must be specifically raised by defendants in their answer, and failure to do so results in a waiver of the right to assert the defense at trial. *Strout Realty, Inc. v. Burghoff*, 19 Ark. App. 176, 718 S.W.2d 469 (1986). Here it is clear that appellants did not raise the election-of-remedies defense in their answer, and that the issue was not considered until well into the litigation when the question was broached by the chan-

cellor. Given appellants' failure to raise this issue in the original responsive pleading, we find no error on this point.

■ Next, appellants argue that the chancellor erred in retaining jurisdiction where appellees, as vendors of the property, had an adequate remedy at law. We do not agree. Our supreme court has long held that, where an estate or interest in land is the subject matter of the agreement, the jurisdiction of a court of equity to enforce specific performance is undisputed and does not depend upon the inadequacy of the legal remedy in the particular case. *See, e.g., Dickinson v. McKenzie*, 197 Ark. 746, 126 S.W.2d 95 (1939).

■ Appellants next contend that the chancellor erred in failing to give effect to the contractual provision permitting appellants to declare the contract null and void if appellees failed to provide a disclosure statement in a timely manner. The chancery court recognized that the contract contained such a provision, but found that appellants had waived their right to declare the contract void because appellants failed to make any mention of appellees' failure to comply with the disclosure provision in their August 15, 1994, written addendum to the contract in which they asked to be released from their duty to buy the house. Instead, appellants merely stated in the addendum that they wanted to be released from the contract because of the many structural problems that were discovered after they had the house inspected on August 7, 1994. We think that the chancellor's finding of waiver is supported by the facts and the law. Arkansas courts have held that a party may waive a breach of contract by the other side, yet still be liable for his own subsequent breach of the contract. *Southern Pipe Coating, Inc. v. Spear & Wood Mfg. Co.*, 235 Ark. 1021, 363 S.W.2d 912 (1963). It has also been held that a party with knowledge of a breach of contract by the other party waives the right to insist on a forfeiture when he allows the other party to continue in performance of the contract. *Grayson-McLeod Lumber Co. v. Slack-Kress Tie & Stave Co.*, 102 Ark. 79, 143 S.W. 581 (1912); *Stephens v. West Pontiac-GMC, Inc.*, 7 Ark. App. 275, 647 S.W.2d 492 (1983). Finally, it has been said that:

> Where a party advances a particular reason for his conduct or decision arising under a contract, he cannot afterward advance another reason to the detriment of the opposing party. Where a party refuses to perform the contract on the ground of a specific breach by the other party he waives all other breaches then known to him.

17A C.J.S. *Contracts* § 492(1) (1963). Here, appellants knew three days after signing the agreement that appellees had failed to timely provide the disclosure statement, but based their attempted repudiation of the contract on other grounds. Furthermore, by failing to specify the lack of a disclosure statement as grounds for refusal to perform the contract, and by instead grounding their refusal on the alleged structural defects disclosed by their inspection, appellants encouraged further action by appellees. Appellees had a contractual right to repair any defects revealed by appellants' inspection of the premises. In furtherance of this right, appellees incurred expenses by hiring an engineer to perform an additional inspection of the house to determine its structural integrity and to recommend repairs that would be reasonably necessary to assure the continued structural performance of the house. Appellees' engineer prepared his report on August 24, 1994, and appellees at all times expressed their willingness to repair the defects in the home. It was not until approximately two weeks after appellees incurred this expense that appellants raised, for the first time, the failure to provide a disclosure statement as grounds for their refusal to perform the contract.

■ ■ It has been held that a party to a contract who intends to insist on a forfeiture must do so at once, and that the forfeiture will be waived if the other party is permitted to proceed with performance. *Arkansas Municipal Bond Bureau, Inc. v. Fouke Special School District No. 15*, 203 Ark. 677, 158 S.W.2d 28 (1942). Moreover, a party to a contract containing a time limit for performance will not be permitted to deny liability because the contract was not performed within the specified time if, after the expiration of that time limit, he induces the other party to continue in performance of the contract. *Id.* Although it is true, in the present case, that appellants refused to perform the contract,

they based that refusal on the existence of structural defects that appellees had a contractual right to cure. We think that appellants, by basing their refusal to perform on such defects, induced appellees to continue performance of the contract by engaging an engineer to recommend necessary repairs. In most cases, the issue of whether or not a waiver occurred is a question of fact, *Bright v. Gass*, 38 Ark. App. 71, 831 S.W.2d 149 (1992), and under these circumstances, we cannot say that the chancellor's finding of waiver was clearly erroneous.

Next, appellants contend that the chancellor erred in granting specific performance where appellees were in violation of the terms of the contract. This point for reversal, in essence, asks us to review the case *de novo* and reverse on the grounds that the chancellor's order of specific performance was inequitable. However, because appellants' arguments under this point hinge on their assertions that they did not waive appellees' failure to provide a disclosure statement and that appellees were not entitled to specific performance because they had an adequate remedy at law, we need not address this point further because we have already decided those issues adversely to appellants.

Finally, appellants contend that the chancellor erred in awarding attorneys' fees. With regard to the chancery court's award of a $5,000 fee to appellees' counsel, we note that pursuant to statute a trial court may award attorney's fees to the prevailing party in an action involving breach of contract. Ark Code Ann. § 16-22-308 (Repl. 1994). Furthermore, the decision whether to award fees and how much to award is a discretionary determination that will be reversed only if the appellant can demonstrate an abuse of discretion. *Nelson v. River Valley Bank & Trust*, 334 Ark. 172, 971 S.W.2d 777 (1998). Here, appellees requested attorneys' fees in excess of $35,000, and we cannot say that the chancellor's award of $5,000 in attorneys' fees was an abuse of discretion.

Affirmed.

BIRD and MEADS, JJ., agree.

ROBBINS, C.J., and HART and NEAL, JJ., dissent.

JOSEPHINE LINKER HART, Judge, dissenting. I respectfully dissent from the prevailing opinion's affirmance of the chancery court's determination that appellants waived their right to declare the contract at issue void because they did not specifically list in their August 15, 1994, written addendum to the contract appellees' failure to comply with the seller's disclosure provision as a breach of contract committed by the appellees. I conclude that the chancery court clearly erred in finding that appellants waived their right to declare the contract void based on appellees' breach of the disclosure provision. Because I so conclude, I also dissent from the prevailing opinion's affirmance of the chancery court's award of a $5,000 attorney's fee to appellees' counsel.

The chancery court erred in applying the legal principle of waiver to appellants' August 15, 1994, addendum to the contract. "Waiver" has a particular meaning in the law of contracts. Professor Farnsworth defines waiver as a term of art in the law of contracts as follows:

> The meaning of *waiver* has provoked much discussion. Although it has often been said that a waiver is "the intentional relinquishment of a known right," this is a misleading definition. What is involved is not the relinquishment of a right and the termination of the reciprocal duty but the excuse of the nonoccurrence of or a delay in the occurrence of a condition of a duty.

II E. Allan Farnsworth, *Farnsworth on Contracts* § 8.5 at 425 (2d ed. 1998) (footnotes omitted). As a matter of Arkansas case law, the non-breaching party to a contract waives the other party's breach in two ways: by specifically excusing the breach or by permitting the breaching party to continue to perform, thereby becoming estopped from subsequently refusing to perform his contractual obligation on the basis of the other party's breach. *See, e g., Arkansas Mun. Bond Bureau, Inc. v. Fouke Special Sch. Dist. No. 15,* 203 Ark. 677, 158 S.W.2d 28 (1942) (estoppel); *Wolff v. Alexander Film Co.,* 186 Ark. 848, 56 S.W.2d 424 (1933) (estoppel); *Keopple v. Delight Lumber Co.,* 105 Ark. 233, 151 S.W. 259 (1912) (explicit excuse of breach); *Stephens v. West Pontiac-GMC, Inc.,* 7 Ark. App. 275, 647 S.W.2d 492 (1983) (estoppel). As noted in

the prevailing opinion, on September 9, 1994, appellants stated in a letter to the appellees' real estate agent that they wished to terminate the contract because of appellees' breach of the disclosure provision. From August 15, 1994, when appellants first stated their intention to declare the contract void, until the end of September 9, 1994, when appellants specifically stated that they wanted to terminate the contract because of appellees' failure to comply with its disclosure provision, appellants never excused the appellees' breach of the contract nor accepted efforts by appellees to repair the house; therefore, appellants did not waive appellees' failure to comply with their contractual duty to disclose defects in the house.

The prevailing opinion affirms the chancery court's analysis of the waiver issue based on the following statement cited in 17A C.J.S. *Contracts* § 492(1) at 697 (1963): "Where a party refuses to perform the contract on the ground of a specific breach by the other party he waives all other breaches then known to him." This statement in C.J.S. is supported by a footnote citation to *Warner Co. v. MacMullen*, 112 A.2d 74 (Pa. 1955). However, the Pennsylvania Supreme Court's reasoning in *Warner Co.* belies the expansive interpretation given the decision by the author of C.J.S.

Like the instant case, *Warner Co.* involved an appeal of an order granting a plaintiff specific performance of a contract for the sale of real property. The court's reasoning in *Warner Co.* is based on estoppel — a theory that is inapposite to the instant case, given that appellants never indicated they were willing to accept efforts by appellees to repair the house. With regard to waiver of a breach of contract by estoppel, in *Warner Co.* the Pennsylvania Supreme Court stated:

> It is a firmly established principle, founded on the doctrine of equitable estoppel, that a refusal to perform the obligations of a contract on the ground of a specific breach assigned as the reason for such refusal, constitutes a waiver of all other breaches then known to him; where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, *after litigation has begun*, change his mind, to the detriment and

disadvantage of the other party, and seek to justify his action by advancing some other reason.

*Warner Co.,* 112 A.2d at 77-78 (internal footnote omitted) (emphasis added). If the facts of this case were before it, the *Warner Co.* court would not conclude that appellants were estopped, by waiver, from declaring the contract at issue void. It would not do so because appellants did not wait until after appellees sued them for specific performance to put forth appellees' failure to comply with the seller's disclosure provision of the contract as a basis for their refusal to purchase the appellees' house. As noted above, appellants first noted this failure in a letter their counsel sent to appellees' real estate company on September 9, 1994. Appellees did not file suit against appellants, seeking specific performance, until seven months later, in April 1995. I dissent from the prevailing opinion's affirmance of the chancery court's determination of the "waiver" issue because it rests, via C.J.S., on an overly broad interpretation of *Warner Co., supra.*

Moreover, I am unpersuaded by the prevailing opinion's citation of *Arkansas Mun. Bond Bureau, Inc. v. Fouke Special Sch. Dist. No. 15,* 203 Ark. 677, 158 S.W.2d 28 (1942). This case is merely an example of the estoppel sort of waiver of a breach of contract. It holds that the non-breaching party to a contract waives the other party's breach by permitting that party to continue to perform, thereby becoming estopped from subsequently refusing to perform his contractual obligations on the basis of the other party's breach.

The prevailing opinion finds a factual basis for its estoppel analysis by noting that the appellees incurred expenses by hiring an engineer to inspect their house to determine whether it was structurally sound. It also notes that the engineer prepared a report of his inspection of appellees' house before appellants specifically stated that they wanted to terminate the contract because of appellees' failure to comply with the contract's disclosure provision. The prevailing opinion's effort to find a factual basis for its estoppel theory is unavailing.

As the prevailing opinion itself notes, the appellees had a right, pursuant to the contract, to repair defects in their house, but only if the repair would not cost more than $2,000. It was the appellees' intention to pursue this contractual right that led them to hire an engineer to inspect their house. The appellants never took the position that they would buy the house if appellees would have it inspected by an engineer and have any defects in the house repaired. Appellants did not permit or induce appellees to hire the engineer. In effect, the prevailing opinion asserts that appellants are estopped by their initial silence concerning appellees' failure to comply with the seller's disclosure provision as a breach of the contract. However, estoppel arises out of silence if the action taken by the party asserting estoppel was the natural result of the silence. *See Anadarko Petroleum Co. v. Venable*, 312 Ark. 330, 850 S.W.2d 302 (1993). The appellees' decision to hire an engineer to inspect their house arose out of their pursuit of their contractual right to have their house repaired, not out of any silence by appellants.

With regard to the chancery court's award of a $5,000 fee to appellees' counsel, I note that pursuant to statute a trial court may award attorney's fees to the prevailing party in an action involving breach of contract. Ark. Code Ann. § 16-22-308 (Repl. 1994). However, because I would reverse the chancery court's order directing specific performance of the contract at issue, the appellees would no longer be the prevailing parties. When a judgment is reversed on appeal, any attorney's fee award made by the trial court to the appellee's trial counsel is also reversed. *American Health Care Providers, Inc. v. O'Brien*, 318 Ark. 438, 886 S.W.2d 588 (1994); *Brookside Village Mobile Homes v. Meyers*, 301 Ark. 139, 782 S.W.2d 365 (1990); *Mecco Seed Co. v. London*, 47 Ark. App. 121, 886 S.W.2d 882 (1994).

For the reasons set forth above, I respectfully dissent from the prevailing opinion in this case. I conclude that the chancery court's order directing appellants to close the purchase of appellees' house should be reversed and this case remanded.

ROBBINS, C.J., and NEAL, J., join in this dissent.